## Benjamin Fereday and Herman Pry *v.* Francis Mankedick, Appellant.

| 172 | 535 |
| 25 SC | 194 |
| 172 | 535 |
| 28 SC | 359 |
| 28 SC | 361 |

*Streets—Plan of lots—Deed—Obstruction of street.*

Where a person takes a deed for a lot, and the deed refers to a plan of lots showing the lot purchased abutting on a street designated by name, and the purchaser subsequently buys other lots at sheriff's sale, and the sheriff's deeds refer to the same plan, and the purchaser resells these lots, and in his deeds refers to the same plan, he cannot close up the street adjoining his lot, if the other lot owners object.

Argued Oct. 25, 1895. Appeal, No. 208, Oct. T., 1895, by defendant, from decree of C. P. No. 3, Allegheny Co., Nov. T., 1892, No. 510, on bill in equity. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to prevent the obstruction of a street.

The case was referred to William M. Watson, Esq., as master, who reported the facts to be as follows:

In April, 1872, Francis Jamison, being the owner of a tract

of land in South Fayette township, Allegheny county, Pennsylvania, conveyed the same to C. Hanson Love by deed dated April 1, 1872, acknowledged April 8, 1872, and recorded April 8, 1872, in the recorder's office of said county in deed book, vol. 292, page 23. C. H. Love executed and delivered to Francis Jamison a purchase money mortgage dated in blank, 1872, acknowledged April 8, 1872, and recorded on same day in the recorder's office aforesaid in mortgage book, vol. 136, page 335, covering almost all of the land as described and conveyed by Jamison, cutting off a portion on the westerly side of the tract in these descriptive words : " thence along the center of said railroad . . . . 1819 feet more or less to Station street as located in C. H. Love's plan of Arlington, thence along the west side of Station street, 406 feet from center of railroad to Mevay avenue," and closing with the words " containing about 100 acres."

This mortgage was given to secure to Jamison the payment of $8,000 in four equal annual installments as follows : " one of said installments of $2,000 with interest on the whole amount on April 1, 1873 and $2,000 with interest on the whole amount remaining unpaid on each succeeding first day of April," with clause providing for sci. fa. for nonpayment of said installments of either principal or interest for the period of thirty days, in which event the whole principal and interest then due and remaining unpaid shall become due and payable and collectible.

Default was made on the mortgage and on April 27, 1876, by scire facias at No. 153, July term, 1876, court of common pleas No. 2, of Allegheny county, Jamison foreclosed the same and obtained judgment thereon on May 24, 1876, by default against C. H. Love for $9,610.30, being the entire amount secured by the mortgage, with interest.

On August 27, 1873, and after at least $2,000 and interest on the entire amount of the mortgage debt and interest was overdue and unpaid, Jamison, the mortgagee, executed upon the margin of the record of the mortgage a release in the following words :

" For value rec'd I hereby release from the lien of this mortgage, lots Nos. 91, 92, 93 and 94, Arlington plan, Rec. Plan Bk. vol. 5, p. 54 and 55. Witness my hand and seal, August 27th, 1873."

     Test.          (Signed)    FRANCIS JAMISON.    [SEAL.]
WM. J. RUCH.

On June 28, 1876, the judgment against Love was assigned of record by Jamison to Francis Mankedick, the defendant in the present case, and after execution had issued thereon at lev. fa. No. 227 July term, 1876. All the papers in this execution are lost, but from the testimony and docket entries the master finds that on July 1, 1876, certain persons who had bought lots in C. H. Love's plan called "Arlington" petitioned the court and thereon, on July 1, 1876, the court ordered that after the sheriff should sell that portion of the mortgaged premises remaining unsold by Love, there should be then exposed to sale, if necessary, according to schedule thereto attached, in the inverse order of alienation those lots in the plan which Love had conveyed.

Of the presenting of this petition Francis Mankedick had express notice through his attorney, neither Mankedick nor his attorney objected, nor was there any attempt made by them to have the court qualify the order in any way before or after it was made. The order made, adjusting the mode and conduct of sale, was a definitive decree adjudicating that the petitioning lot owners had a legal right to have the sheriff sell in a certain order, and an appeal therefrom would have lain, but no appeal was taken by Mankedick.

This order was made because the court considered the act of April 22, 1856, P. L. 1856, section 9, as applicable to the case, and was generally observed and carried out. A very great majority of the thousand lots in the plan was sold to Francis Mankedick, and by arrangement with Mankedick prior to the sheriff's sale and without any reservation whatever by Mankedick, the others who also had purchased lots subject to the mortgage, were permitted to buy in their lots for the nominal price of $15.00 apiece. The sheriff returned that he had sold the land to the various bidders according to the order of court, and had realized in all the sum of $7,617.35, which included the proceeds of the sales to Mankedick. An objection was made by Mankedick to the sheriff's return, for not naming purchasers and prices, and after an amended return, absolutely confirmed, the sheriff executed and delivered to the various purchasers deeds for lots in the Arlington plan, by reference thereto, the plaintiff having withdrawn his exceptions. One of these deeds from the sheriff is to F. M. Love for fifty-seven lots, including

lots Nos. 163 and 164, 163 being described as bounded by Station street. These lots afterwards by deed of F. M. Love, dated June 21, 1889, became vested in Robinson Wilson. Lots Nos. 321, 322, 323 and 324 were (inter alia) bought in by and conveyed to Francis Mankedick, who by deed dated the 9th day of November, 1890, deed book 740, page 23, granted and conveyed the same to Herman Pry, the plaintiff. This deed refers expressly to Arlington plan by vol. and page, names Station street as one of the boundaries, and contains all the words usual, in the omnibus clause, of a printed Pennsylvania fee simple deed, to wit (inter alia):

" Together with all and singular the buildings, improvements, ways, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging or in any wise appertaining," etc.

The plaintiff then erected his dwelling house upon these lots at the southeast corner of Mevay avenue and Station street, and has resided there ever since.

The plan of Arlington was laid out by C. H. Love and covered all the land included in the purchase-money mortgage from Love to Jamison. The deed from C. H. Love et ux. to defendant conveying lots 1 and 2 therein, and dated November 1, 1872, was acknowledged November 18, 1872, but never recorded. The surveying and laying out of the plan was in July, 1872, and it was recorded November 18, 1872, in the recorder's office of Allegheny county, in plan book 5, pages 54 and 55. This plan shows Station street as extending in a straight line from the southwestern to the northwestern corner of the plan, being in fact the westernmost land therein. Its uniform width is forty feet and it leads, on the plan, into Arlington avenue, which adjoins and parallels the tracks and right of way of the P. C. C. & St. L. Railway. At the southeast corner of Arlington avenue and Station street stand the defendant's dwelling house and store, under one roof, on his lots 1 and 2. Not earlier than July, 1877, defendant built a fence at the southwest corner of lot No. 1 and extending quite across Station street. North and south of this fence defendant erected on the westerly side but directly in Station street a corn crib, two water closets and a wash house. Not earlier than July, 1878, defendant erected at the northwest corner of lot 163 another fence extending across.

Station street, and has more or less since then maintained these two fences and out buildings. Not until May, 1892, did defendant successfully assert and maintain exclusive possession and control of the enclosed space which extended about one hundred and fifty feet from cross fence to cross fence, when he plowed up and cultivated the patch for farming or vegetables. He may have used a portion of the space for gardening previous to May, 1892, but up until that time the public passed and repassed on foot through the two cross fences at an open space in each at the western side and close to the fence which extended from Arlington avenue to Mevay avenue and marked the line between Station street and the property of Benjamin Fereday. From the spring of 1872 until about July, 1877, Station street was used, though never graded nor cared for in any way by the township authorities nor the people in the plan. It was during that time used now and then by teams hauling coal and other vehicles as well as pedestrians, but the master finds and is of the opinion it was never what is known as an open or public street.

It is certain, however, that up to May, 1892, the defendant's cross fences were not allowed to wholly obstruct the passage, north and south, of foot travelers, as it is admitted the ends of the boards next to Fereday's line were constantly and repeatedly nailed up and then broken off, and by persons unknown, and the footpaths were well worn. From the time C. H. Love became the owner of the Jamison farm until the sheriff's sale in July, 1876, he conveyed a number of lots, and at the time of the said sale, there were over fifteen dwelling houses erected here and there in the plan. Beyond all question, C. H. Love, by his plan and conveyance of lots therein, dedicated all the streets and ways in Arlington plan to the public so far as any mortgagor could. This needs no discussion.

It is important that Francis Jamison lived in the plan from its inception to the date of his death, which occurred after the sheriff's sale in July, 1876, and that no word or act of his in disapproval of the Arlington plan appears in this case. Beyond the release on the margin of his mortgage there appears no distinct affirmative recognition by him of the plan, as such, though from July, 1873, to May, 1876, he certainly beheld dwelling houses and other improvements being made on the

land without interference on his part, so far as the testimony in this case shows; but there can be no reasonable doubt that he knew of, and had seen the plan before or at the time he accepted Love's mortgage to him containing, in the description, an explicit reference thereto, and the master therefore finds, from the circumstances, that he knew of the plan. It does not appear that he was either a traveler or an invalid confined to his house, but he knew what was going on, and had most exact knowledge when, in his release of lots Nos. 91, 92, 93 and 94, he referred to Arlington plan as being recorded in plan book 5, pages 54 and 55.

The master also finds that Francis Mankedick has executed and delivered many deeds conveying lots therein by express reference and according to C. H. Love's plan of Arlington, and stating volume and page of plan book.

The master recommended a decree in accordance with the prayer of the bill.

The court without filing an opinion dismissed the exceptions to the master's report, and entered the following decree :

And now, June 6, 1895, the above case having been referred to William M. Watson, Esq., master, and he having made a report favorable to the prayer of the plaintiffs, which report has fully set forth the facts and evidence in the case, and said report after argument having been fully considered by the court, the exceptions thereto are dismissed, and the court do order and decree that a perpetual injunction be issued requiring Francis Mankedick, defendant, forthwith to remove all the obstructions complained of in plaintiffs' bill from Station street, so as to allow all persons the free and common use of said street, and perpetually restraining defendant from doing any act whereby the plaintiff and all other persons may be hindered or obstructed in the free and common use of Station street in the bill mentioned from Arlington avenue therein mentioned to the other terminus thereof in Love's plan of Arlington, and restraining defendant from interfering with the plaintiffs, their servants, etc., in the removal of any obstructions that have been placed in said street preventing the free and common use of said street. Defendant to pay all costs in this case, including the stenographer's charges of $68.00. It being stated that there was an understanding among the counsel for both parties that said charges should be so taxed.

*Error assigned* among others was above decree, quoting it.

*D. F. Patterson*, for appellant.—While the general rule in respect to lapse of time is that equity follows the analogy of the statutes of limitation, it is well settled that laches for a much shorter time than the full statutory period, in connection with other circumstances, is sufficient to stay the hand of a chancellor in the enforcement of a technical legal right: Neely's App., 85 Pa. 387 ; Evans' App., 81 Pa. 278 ; Ashurst's App., 60 Pa. 290 ; Galliher v. Cadwell, 145 U. S. 368 ; Arnett v. Finney, 3 Atl. 698.

*J. W. Kinnear*, for appellees.—No laches can be imputed to the public : United States v. Kirkpatrick, 9 Wharton, 720 ; Elliott on Streets, 89.

PER CURIAM, January 6, 1896 :

A careful examination of the record, including the able and exhaustive report of the learned master, has convinced us that his findings of fact as well as his conclusions of law are substantially correct, and fully justified the decree from which this appeal was taken.    There is nothing in either of the specifications of error that requires special notice.    Neither of them is sustained.

Decree affirmed and appeal dismissed with costs to be paid by the defendant.