## Commonwealth *v.* Shoemaker.

*Dedication—Sale of lots by plotted plan of streets.*

A sale of a large number of lots by conveyances which called for a frontage upon a certain street amounts to a dedication as between the vendor and his successors in title and all the vendees. The right passing to the purchaser was not the mere right that he might use the street but that all might use it. Until the street is actually accepted by the public an owner of any one of the lots fronting upon any of the streets might, by a proceeding in equity, have prevented an obstruction of the streets by other owners of lots within the plan.

*Dedication—Public street—Acceptance necessary to sustain indictment for nuisance.*

A mere dedication of a street to public use will not make it a public street unless it is accepted by the public and until there has been such acceptance an indictment will not lie for the obstruction of such a street; but such street may be accepted by public user, without the active intervention of the municipal authorities.

*Acceptance of street measured by lines of dedication.*

In a township the best evidence of acceptance of a street is the assertion of control thereof and the expenditure of public money by the supervisors. The public may stamp the street as a public highway, however, without the intervention of the supervisors, by the general use of it as such. When a street has been thrown open for use by the owner and has long been used as a public highway the rights of the public are not confined to the mere beaten track upon the street but extend to the lines upon which it was actually opened upon the ground of the owner.

*Nuisance—Obstruction of highway—Charge of court—Effect of acceptance and improvement.*

The public having elected by user to accept a dedicated street such acceptance must go to the extent of the dedication and opening up of the street by its owner to public use. While the public is not bound to improve the whole surface, neither does the maintenance of a certain portion by the supervisor work a surrender of any of the dedicated width. Anything which closes or obstructs a road that once has been opened is a nuisance

and may be abated. It was error to charge the jury to the effect that only such part of the street as the supervisors had actually done work upon became a public highway.

Argued Feb. 15, 1900. Appeal, No. 19, Feb. T., 1900, by plaintiff, in suit of Commonwealth of Pennsylvania against John P. Shoemaker, from judgment of Q. S. Lycoming Co., Sept. Sess., 1899, No. 57, on verdict of not guilty. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by W. D. PORTER, J.

Indictment for maintaining a nuisance. Before MAYER, P. J.

It appears from the record that the indictment was for maintaining a public nuisance by building a barn on the public highway in the village of Clarkstown.

Other material facts appear in the opinion of the court.

The commonwealth submitted the following points:

[1. If the jury find that Charlotte Brownell opened up a street fifty feet wide in the village of Clarkstown and dedicated it to public use, and if they further find that the public used this street for public travel more than twenty-one years, such use is conclusive evidence of an acceptance by the public of the street as dedicated and opened.] [16]

[2. If the jury find that this street was dedicated to the public and traveled by the public for over twenty-one years, and accepted by the public, and if they further find that the obstruction complained of in this indictment was built by defendant within the lines of the dedicated street, the obstruction is a public nuisance and the defendant is guilty of the offense charged in this indictment.] [12]

[3. If the jury find that this street was dedicated to public use, and opened up for public travel, and that the supervisors repaired the street where it needed repairs, these acts of the supervisors in making the repairs constitute an acceptance by the public of the street as dedicated.] [7]

[4. If the jury find that this street was dedicated to public use and opened up for public travel fifty feet wide, and that it has been used for public travel for more than twenty-one years, the fact that the travel did not wear a beaten track the whole width of the street, and the fact that some of the supervisors declared that they only accepted thirty-three feet of the width

of the street, will not destroy the rights of the public to the entire width of the street as laid out and opened.] [13]

[5. Where a street has been dedicated to public use and opened up fifty feet wide by the owner of the fee, and accepted by the supervisors repairing it, subsequent supervisors have no authority to limit the rights of the public to only such width of the street as they may adjudge necessary for public travel.] [14]

[6. Where a street has been dedicated to public use and opened up to public travel, and traveled by the public and repaired by the supervisors of the township, the rights of the public are not confined to that portion of the street repaired by the supervisors, or to the beaten track caused by the travel, but extend to the limits of the street as dedicated.] [11]

[7. A street dedicated to public use and leading from one public road to another, and opened up to public travel and traveled by the public, and repaired by the supervisors of the township, becomes a public highway as soon as the supervisors take charge of the street by repairing it, and all encroachments thereafter upon the street as dedicated are public nuisances.] [10]

[8. If the jury find that this street was dedicated to public use and was opened up for public travel fifty feet in width, and that the public had the free and unobstructed and exclusive use of the full width of the street where the obstruction was placed by the defendant, for twenty-one years or more, the obstruction is a public nuisance and the defendant is guilty of the offense charged in the indictment.] [15]

[9. Where a street has been dedicated to public use and opened up fifty feet in width for public travel, and the public has traveled the street for more than twenty-one years, the rights of the public are not confined to the beaten track, but extend to the full width of the street as dedicated.] [9]

[10. If the jury find that this street was dedicated to public use, and opened up fifty feet wide for public travel, and traveled by the public, it became a public highway to the full extent it was dedicated as soon as the supervisors expended public money on it by repairing it.] [8]

The above points were answered by the court as follows:

I decline to affirm any and all of these points, for the reason that it is a question of fact to be submitted to the jury and have them determine as to what extent the street claimed to be ded-

icated was used and occupied by the public.   [All of the supervisors who were called as witnesses in the case, except one, who was a relative of the prosecutor and an interested party, testified that work was done only upon a portion of the road, and that only thirty-three feet of said road was accepted by the township.] [17]   The rule of law in regard to the dedication of streets in boroughs and cities has no application where a road is laid out and dedicated to the public in a township.   It becomes then a question to be determined from the evidence how much of said road was accepted by the supervisors.   The rule in the court of quarter sessions of this county has been to lay out a public road or highway not exceeding thirty-three feet in width, and to this extent the supervisors allege that they used and occupied this road.

A piece of land may be dedicated to public use and yet the public convenience will not require the whole of it.   A part may be in fact appropriated and the residue may be by common consent relinquished: State v. Trask, 6 Ver. 355; Jordan v. Chenoa, 47 N. E. Rep. 191.

If work has been done upon only a portion of a road and the intent of the public authorities appears to be to make a part of the road passable, then this part only is accepted and becomes a public highway, and as to the remainder there is simply an offer to dedicate, never accepted by the public: Alton v. Neeuwenberg, 108 Mich. 629.

The road in this case was laid out by the owner of the land for speculative purposes, in order to sell lots abutting on this road, and it would be a hardship on the township to compel the supervisors to repair and keep up a fifty-foot road solely for the benefit of this speculator in lots.] [6]


The court charged the jury as follows:

This suit is brought against Mr. Shoemaker, alleging that he is guilty of erecting and maintaining a nuisance upon a public street or highway in Muncy Creek township, in this county. The evidence shows that Mr. Opp, who is the owner of land in that township, was desirous of laying out a portion of it in town lots, and for that purpose undertook to make a plot of the lands that he desired to lay out and bounded them by a public street.   This was in 1860, according to my recollection.

Some of these lots have been sold to parties who have built houses on them, and the road or street in controversy is at the back end of these lots, that is, it forms an alley, or is called an alley by some of the witnesses. No houses have been built on any portion of the street or highway on the north side, but the buildings are on the southern side of the road. It is alleged on the part of the commonwealth that this being a public road or highway, and Mr. Shoemaker having erected a shed which they claim encroaches upon it, that he is guilty of what is known in the law as a public nuisance, and could be indicted and convicted if the portion of this public road or highway was a public road or highway, and this building was erected upon that portion of it.

The question for the jury to determine under the evidence is whether that portion of this street or highway was a public highway in Muncy Creek township. The mere dedication of the land to the public by Mr. Opp would not render it a public highway. The mere fact that he desired for his own convenience to lay a portion of his lands out in town lots, and lay a public street along a portion of these lots, would not render it a public highway, unless the supervisors of the township undertook to accept this public road or highway. As it was laid out for his own convenience, and for the purpose of selling these lots for his own benefit and advantage, he could not compel the municipality to accept it as a public road so that he could make a profit out of his own property by laying it out in town lots and laying a street along it for the purpose of selling them. I do not agree with counsel for the commonwealth that the supervisors were compelled to accept the whole of this street or highway. They were not compelled to accept any of it. They were not compelled to put any repairs upon it, and when they undertook to accept it [they had a right to accept whatever part of it in their judgment was necessary for the purposes of the public. And if the jury believe from the evidence that the supervisors of the township accepted only a portion of this street, to the extent of thirty-three feet, they had a right to do that, and had a right to abandon that portion of the street or way that was not included in the limits of what they chose to accept and work upon.] [5]

That is the whole question in this case. [If the jury from

the evidence in this case come to the conclusion that this public street or highway was dedicated to the public by Mr. Opp, and the supervisors accepted it and worked upon it, it would only become a public street or highway to the extent of their acceptance and the extent of their working upon it.] [4] And if the jury believe that they accepted it only to the extent of thirty-three feet, and worked upon it to that extent, I do not think that the balance of the street would become a public highway such as could be encroached upon by the owners of the lots.

Whether Mrs. Brownell has any remedy against Mr. Shoemaker for building on a portion of this public street or highway, is a question not involved in this case. We do not assent to the law as requested in the various points submitted by counsel for the commonwealth, because the law in relation to streets in cities and boroughs is entirely different from what it would be in a township. Where a street is once opened in a borough or city, it is a whole street, of course, and the case referred to by counsel was a case of a street in boroughs or cities, and the same rule would not apply to townships. [To lay out a street or highway sixty feet in width in a township, and then because the supervisors of that township may have worked on a portion of the road, to compel them to keep the whole sixty feet in repair, we do not think is the law.] [3] And we say to you in this case [that if you come to the conclusion under the evidence that the supervisors only accepted thirty-three feet, and worked upon it to that extent, the defendant is not guilty of encroaching upon this public road or highway and could not be convicted.] [1] [If, however, the jury believe from the evidence that they accepted the whole of it and worked upon it with the intention of accepting the whole of it, not only the thirty-three feet, but the whole of it, then under the law it would become a public highway, and the defendant would be liable to be indicted for having encroached upon it.] [2]

If you convict the defendant, you say nothing about the costs. If, however, you find him not guilty, you have four ways of disposing of the costs. You may put them on the prosecutor, upon the defendant, or divide them between the prosecutor and the defendant in such proportion as you may determine; but if you impose the costs or any part of them on the prose-

cutor, you must name him in your verdict, or you may put them on the county.

And now, to wit: same day, before verdict, counsel for the commonwealth excepts to the charge of the court and the answers of the court to the commonwealth's points submitted, and by direction a bill is sealed; and counsel further request that the charge of the court be transcribed into longhand from the stenographer's notes and filed of record in said case.

Verdict of not guilty and judgment thereon. Commonwealth appealed.

*Errors assigned* were (1–5) to portions of the judge's charge, reciting same. (6, 17) In answer to commonwealth's points, reciting same. (7–16) In not affirming commonwealth's prayers for instructions to the jury, reciting same.

*J. F. Strieby*, for appellant.—In the case of an ordinary highway running between fences, the right of way extends to the whole space between the fences, and the public are entitled to the use of the whole of it as the highway, and are not confined to the part which may be metaled or kept in repair for the more convenient use of carriages and passengers: Addison on Torts, 328; Elliott on Roads and Streets, 660.

Where a highway is established by mere user over a tract of land of the usual width of a highway, the right of the public is not limited to the traveled track, but such user is evidence of a right in the public to use the whole tract as a highway: Sprague v. Waite, 34 Mass. 309.

If the donor's acts are such as indicate an intention to appropriate the land to the public use, then upon acceptance by the public the dedication becomes complete: Elliott on Roads and Streets, 92.

A road may become a public highway, so that the obstruction thereof may become a nuisance, by mere user of the public: Com. v. Moorehead, 118 Pa. 344.

The dedication and acceptance may both occur in a single day: Cook v. Harris, 61 N. Y. 448.

A street can no more be obstructed partially than closed altogether: Com. v. Moorehead, 118 Pa. 344.

The fact that the supervisors did not put repairs upon the

whole width of the street is no evidence of abandonment of the part not repaired. The supervisors are not required to put any more of the roads in good passable condition than the exigency of public travel requires: Monongahela City v. Fischer, 111 Pa. 9.

The fact that the public did not require the whole width of the road for public travel is no evidence of abandonment: Elliott on Roads and Streets, 660.

But supervisors have no such authority. The court of quarter sessions alone has the power to vacate public roads in a township, as is fully established by the following authorities:

The road once laid cannot be altered, except by a new and an original proceeding according to the road law. Any other doctrine would clothe the supervisors with arbitrary power: Holden v. Cole, 1 Pa. 305.

When a track has once been made on which the public can pass, the whole legal width of the road is to be taken as devoted to public use: McMurtrie v. Stewart, 21 Pa. 322.

Another supervisor has no power to relocate the road for the purpose of placing it upon what he supposes to be its needed site: Furniss v. Furniss, 29 Pa. 15.

*G. B. M. Metzger*, for appellee.—The question of whether an acceptance of part of a dedicated road makes the entire road a public one as dedicated, for the obstruction of which an indictment can be sustained, is not an open one in Pennsylvania: Com. v. Royce, 152 Pa. 88.

A piece of land may be dedicated to public use and yet the public convenience will not require the whole of it. A part may be, in fact, appropriated and the residue may be by common consent relinquished: State v. Trask, 6 Vt. 355; 27 Am. Dec. 554; Jordan v. Chenoa, 47 N. E. Rep. 191.

If work has been done upon only a portion of a road and the intent of the public authorities appears to be to make a part of the road passable, then this part only is accepted and becomes a public highway, and as to the remainder, there is simply an offer to dedicate never accepted by the public: Alton v. Neeuwenberg, 108 Mich. 629.

OPINION BY W. D. PORTER, J., July 26, 1900:

The indictment in this case charged the defendant with erect-

ing and maintaining a public nuisance in the form of a building in a public highway in the village of Clarkstown, Lycoming county. The commonwealth produced evidence which clearly established that John Opp, being then the owner of a large tract of land, in the year 1860 caused the said tract to be surveyed and plotted and laid out into lots fronting upon streets and alleys running over the land. In 1866 John Opp died, having first made his last will and testament, in which he referred to the said plan of lots and devised certain of the lots, designated by numbers upon the plan, to his daughter Phœbe, and in the description of the boundaries of said lots called for a frontage upon the fifty feet wide street, which is the subject of this controversy. The remainder of the tract he devised to his daughter Charlotte, who, in 1867, sold a part fronting upon the southern side of the street to Jared Dewald, and conveyed the same by a deed calling for a frontage upon this fifty feet street. This street, fifty feet wide, was at that time actually opened upon the ground for public travel. It was fenced upon each side and its lines thus clearly defined from end to end, extending from one public road to another, except at a point near the end of the street most distant from defendant's premises, where the street was to some extent narrowed because of buildings upon a lot which John Opp had sold before dedicating the street. The defendant has acquired title to his premises through Jared Dewald, by conveyances, all of which call for this street as a boundary. Jared Dewald testified that at the time he bought he caused his buildings to be placed at the established line of the fifty foot street and placed a board fence upon his side of the street, clearly defining its limits. Various purchasers have acquired title through Jared Dewald and the devisees of John Opp, respectively, to a large number of lots by conveyances which called for a frontage upon this street. This was clearly a dedication to public use, and as between the purchasers and their grantors each had a right to demand that the street should forever be open to the use of the public. The right passing to the purchaser was not the mere right that he might use the street, but that all persons might use it. Until the street was actually accepted by the public an owner of any one of the lots fronting upon the street might, by a proceeding in equity, have prevented the obstruction of the street by other owners of lots

within the plan: Fereday and Pry v. Mankedick, 172 Pa. 535; Quicksall v. Philadelphia, 177 Pa. 301.

The mere dedication of a street to public use by the owner will not make it a public street unless it is accepted by the public, and until there has been such an acceptance an indictment will not lie for the obstruction of such a street. Such a street may, however, be accepted by public user, without the active intervention of the municipal authorities. Where such public user is in pursuance of a dedication by the owner, it requires a much less time to presume an acceptance by the public, than where there has been a mere user without dedication: Commonwealth v. Moorehead, 118 Pa. 344. In a township the strongest evidence of an acceptance of such a dedication is the assumption of control of a street and the expenditure of public money upon it by the township supervisors. The public might stamp the street as a public highway, however, without the intervention of the supervisor, by the general use of it as such. When a street has been actually thrown open for such use by the owner, and has long been used as a public highway, the rights of the public are not confined to the mere beaten track upon the street, but extend to the lines upon which it was actually opened upon the ground by the owner. In the present case the evidence clearly establishes that this street has been traveled by the public for over thirty years without interruption. In 1869 the township supervisor erected a bridge, in order to make access from one of the public roads to this street easier, and did such further work upon the road as to make a safe and convenient road within the lines of the dedicated street throughout its entire length, and from that time until the present the successive supervisors of the township have maintained that roadbed of sufficient width to meet the requirements of the travel thereon.

Here, then, was a dedication of the street to public use, an actual opening of it upon the ground and fixing its boundaries by unmistakable monuments, followed by the use of the street by the public and an assumption of the control of it as a public highway by the supervisors. There was nothing wanting to constitute a complete dedication and acceptance. In 1898 the defendant built a shed which occupied fifteen feet of the width of the street; that he was an intruder without warrant it is unnecessary to say. The ground upon which this intrusion

upon the public street is attempted to be sustained is that the rights of the public are limited to so much in width of street, as was actually worked upon by the supervisors; that the public had only accepted so much of the width of the street as was occupied by the roadbed upon which the supervisors have actually worked. The evidence of the engineer who surveyed the road was to the effect that the roadbed maintained by the supervisors varies from twelve to fifteen feet in width. The supervisors have imposed upon them the duty of keeping the roads safe and convenient for travel. To that end it is their business to maintain such a width of roadbed, within the lines of the road as opened, as to meet the exigencies of public travel. There is no authority given by law to supervisors to fix the width of public highways. It is their business to maintain within the lines of the highway such a width of roadbed as circumstances require. The learned court below adopted the view suggested by counsel for defendant, and charged the jury that if they found "this public street or highway was dedicated to the public by Mr. Opp, and the supervisors accepted it and worked upon it, it would only become a public street or highway to the extent of their acceptance and to the extent of their working upon it." The substance of the whole charge was to the effect that only such part of the street as the supervisors had actually done work upon became a public highway. The language of the court complained of in the first assignment of error is: "If you come to the conclusion upon the evidence that the supervisors only accepted thirty-three feet and worked upon it to that extent, the defendant is not guilty of encroaching upon this public road or highway, and could not be convicted." The supervisors not having any authority to fix the width of streets or roads, it was not for them to say whether this road should be thirty-three feet or fifty feet wide. The owner had dedicated the property and thrown it open to public use. If the supervisor, because of the exigencies of public travel, recognized this street to be a public highway, he had the right to determine primarily of what width he should make his roadbed within the lines of the highway, but he had no right to abandon any part of the width over which the public had rights. The supervisor was not bound to keep the whole width of the public right of way safe and convenient

for travel, but he had no power to surrender the rights of the public to pass over any part of that highway if they desired to do so; he had no right to deprive future supervisors of the power to widen the roadbed to the utmost limits of the street as dedicated, if, in the future developments of the business of that community, such a proceeding should become necessary. The argument directed by the learned court below to the jury, that it would be burdensome upon the townships to permit owners to dedicate wide streets to public use and then require the township authorities to maintain them in good condition throughout their entire width, was manifestly erroneous, for the reason that highways outside of the built up portions of cities are not required to be kept in a smooth condition and safe and convenient for travel throughout their entire width: Monongahela City v. Fischer, 111 Pa. 9. It is not necessary here to pass upon the question which was involved in the case of Alton v. Neeuwenberg, 108 Mich. 629, in which it was held that the public authorities might accept part of the length of a street without impressing the character of a public highway upon the remaining portion of its length. For almost thirty years the public had had the right to pass and repass, as they pleased over that part of this street upon which this defendant encroached. It is true that the jury has found that the defendant's building did not extend into the narrow strip extending along the length of the street which the supervisors had thus far found it necessary to maintain as a roadbed. The owner of the land had dedicated it to public use, had fenced it off and set it apart from his own land for the use of the public as a highway, and all persons who desired to pass along that part of the road had the right to, and, if they wished, did pass over the land upon which the defendant has erected his building. In Commonwealth v. Marshall, 137 Pa. 170, it was said: "We are unable to see how a party who admits that a road was opened where it was laid out, and that the roadbed which was then constructed or defined has always been maintained and used by the public since, can lawfully obstruct either." It thus appears that the Supreme Court clearly recognizes the distinction between the road as opened and the roadbed as maintained for the use of the public. If the obstruction be in the line of either, the nuisance is a public one, and in the case above cited the conviction was

sustained. It should be borne in mind that this was not the case of a road, the location of which was uncertain. When a road is opened thirty-three feet in width, and the supervisor who executes the order removes the obstructions and prepares a track for travel, in the absence of marks upon the ground, the roadbed which he thus establishes is presumed to be in the center of the right of way acquired by the judicial proceedings, and when it comes to be widened to thirty-three feet the center of the traveled way will be accepted as the center of the road ; but this rule does not apply where this beaten track lies within the limits of the road as laid out by the viewers and clearly defined on each side by marks upon the ground : Furniss v. Furniss, 29 Pa. 15. " When the order to open is executed by the supervisors, the whole width is to be taken as devoted to the public use, and though it may not at first be entirely cleared out, that may be done afterwards. Opening a road does not consist merely in moving obstructions. When a track has once been made on which the public can pass, the power to make another location is gone, but the right and the duty of the supervisors to extend it to its legal breadth remains in full force. Anything which closes or obstructs a road that has once been opened is a nuisance and may be abated either by the proper officer or by any private citizen : " McMurtrie v. Stewart, 21 Pa. 322.

In the present case the rights of the public were acquired not through the exercise of the right of eminent domain and an assessment of damages by viewers, but by dedication upon the part of the owner of a street of a given width. This dedication did not impose upon the public any duty whatever. They might take it or leave it, as they saw fit. The public elected to travel the street. When that travel had reached such proportions as to force recognition by the supervisor that this street was a public highway, the supervisor was no more compelled to maintain the whole width of the street in safe condition for travel, than is the supervisor of a mountainous township compelled to maintain the thirty-three feet of road, which he is required to open, in such condition. The supervisor was simply bound to maintain a safe and reasonably sufficient roadbed, and this seems to have been done. The evidence of dedication and acceptance by the public was conclu-

sive, and the acceptance must go to the extent of the dedication and opening up of the street by its owner to public use. The first, second, third, fourth, fifth, sixth and seventeenth specifications of error are sustained.

The points submitted by the commonwealth, the refusal of which are the grounds of complaint in the seventh, eighth, ninth, tenth, eleventh and twelfth assignments of error, are not strictly accurate, in that they entirely leave out of consideration the material fact of the necessity for opening the street, in such a case, after it has been dedicated, in order to constitute it a public highway: Com. v. Royce, 152 Pa. 88. The assignments of error last mentioned are, therefore, overruled. The first, fourth, fifth and eighth requests for charge presented by the commonwealth ought to have been affirmed without qualification, and the thirteenth, fourteenth, fifteenth and sixteenth assignments of error are sustained.

Judgment reversed and venire facias de novo awarded.