# Weida *v.* Hanover Township, Appellant.

*Road law—Dedication—Plan of lots—Streets.*

Where a landowner lays out and records a plan of lots and sells the lots according to the plan, it will be presumed that he has dedicated to public use the streets included in the plan; and such streets will be deemed to have been accepted by the public if the public uses them or public money is spent upon them.

*Negligence—Municipalities—Infant—Street.*

Where a municipality permits a pool of water impregnated with acids to continue along the edge of a street without any intervening fence or barrier, and a child of tender age strays into the pool and is killed, the municipality will be liable in damages to the parents of the child.    In such a case the finding of the body in the pool with the flesh badly burned by the acid justifies an inference that the child must have fallen into the pool, and that he could not struggle long against the deadly conditions that enveloped him.

A mother cannot be charged as a matter of law with contributory negligence in permitting a child of tender years to escape from her house and stray to a dangerous spot in the immediate vicinity of the house, where it appears that, at the time, the mother was engaged in her household duties.

Argued Jan. 9, 1906.    Appeal, No. 45, Jan. T., 1906, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1903, No. 1,071, on verdict for plaintiff in case of William Weida v. Hanover Township.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Affirmed.

Trespass to recover damages for death of a child two and one-half years old.   Before Lynch, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,033.50.   Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Arthur Hillman*, with him *T. W. Hart*, for appellant.—The road near which the drowning occurred was not dedicated to the public: Gowen v. Philadelphia Exchange Co., 5 W. & S. 141 ; Kirkham v. Sharp, 1 Whart. 323 ; Root v. Com., 98 Pa. 170 ; Weiss v. South Bethlehem Borough, 136 Pa. 294.

The street was not accepted by the public: Washington Female Seminary v. Washington Borough, 18 Pa. Superior Ct. 555; Com. v. Shoemaker, 14 Pa. Superior Ct. 194; Com. v. Royce, 152 Pa. 88; Steel v. Huntingdon Borough, 191 Pa. 627; Com. v. Moorehead, 118 Pa. 344; In re Vacation of Alley in Pittsburg, 104 Pa. 622; Oakley v. Luzerne Borough, 25 Pa. Superior Ct. 425.

The parents of the drowned child contributed to the accident: Glassey v. Pass. Ry. Co., 57 Pa. 172; Johnson v. Pass. Ry. Co., 160 Pa. 647; Westerberg v. Kinzua Creek, etc., R. R. Co., 142 Pa. 471; Feehand v. Dobson, 10 Pa. Superior Ct. 6.

The place, time and cause of death were not proven: Allen v. Kingston Coal Co., 212 Pa. 54.

*Rush Trescott*, for appellee.—The street in question was undoubtedly dedicated to public use : Pearl Street, 111 Pa. 565; Com. v. Llewellyn, 14 Pa. Superior Ct. 214.

The street was accepted: Trickett on Road Law, p. 609; Com. v. Moorehead, 118 Pa. 344; Com. v. Llewellyn, 14 Superior Ct. 214.

The township was guilty of negligence : Duffy v. Sable Iron Works, 210 Pa. 326.

Death was due to the negligence of the defendant: Allen v. Willard, 57 Pa. 374 ; City of Scranton v. Dean, 2 W. N. C. 467.

The parents were not guilty of contributory negligence :

Duffy v. Sable Iron Works, 210 Pa. 326; Del Rossi v. Cooney, 208 Pa. 233.

OPINION BY HEAD, J., March 12, 1906 :

By its seventh point the defendant asked the court below to instruct the jury that " under all the evidence the plaintiff cannot recover and the verdict should be for the defendant." The refusal of this point is the sole error assigned. We have nothing in the record before us requiring us to examine the correctness of any ruling made during the trial on the admission or rejection of evidence or the soundness of the instructions, on the legal principles involved, contained in the charge to the jury. We have simply and practically a demurrer to the whole of the evidence.

Appellant earnestly contends there was no sufficient evidence to warrant a finding that there had ever been a dedication to public use, by the former owner, of Dexter street or at least of that portion of it west of Oxford street; and further that there had ever been any acceptance by the public of such a dedication if made. Doubtless, dedication is a question of intention, but the inquiry on this subject is properly directed to the intention existing at the time of the alleged dedication rather than to the state of mind of the owner years afterwards. Naturally, then, the acts of the owner done at the time would be the media through which we would expect to discover his intention.

We have in this case evidence that Dexter street was one of a number of streets laid out in a large plan of lots adjacent to the city of Wilkes-Barre. The streets were named, their widths given and the lots all regularly numbered on a plan which the owner had recorded in the usual way in the recorder's office in 1891. From that time on lots were sold and conveyed according to this recorded plan and Dexter street with the other streets was actually opened on the ground from one end to the other. Such acts by an owner of land have been regarded, in all the cases cited or examined, as, at least, strongly persuasive evidence of an intention to dedicate. In many of them, indeed, the courts seem to consider acts of this character as amounting to an actual dedication : In re Opening of Pearl Street, 111 Pa. 565; Com. v. Shoemaker, 14 Pa. Superior Ct. 194; Com.

v. Llewellyn, 14 Pa. Superior Ct. 214.   In no case that has been called to our attention has such testimony ever been excluded as irrelevant or held insufficient to sustain a verdict.   True, the former owner when called as a witness denied any intention of dedicating the portion of Dexter street west of Oxford, and the defendant had the benefit of this testimony before the jury. But as against this there were the facts that the street was shown on the plan, with lots laid out and numbered on both sides of it, west of Oxford street, just like it was east of that street and just like the other parallel streets west of Oxford. If none of the streets on the west side of Oxford were dedicated, about one-half the lots in the entire plan were without any street frontage.   If all the others were dedicated it is difficult to see any evidence that the west end of Dexter street alone was excepted from the general intention.   Under these circumstances we are unable to say that the verdict, in this respect, was without evidence to support it.   But a dedication of the street by the owner, unless followed by evidence of an acceptance by the public, would be valueless to the plaintiff.   Without such acceptance no act of the owner of the soil could impose upon a municipality the obligations and responsibilities incident to the lawful opening for travel of a public road or street within its limits.   It may be conceded that such acceptance is ordinarily indicated by some formal act of the municipal officers having such matters in charge.   But the public which is the master need not await the formal action of its own servants and agents.   By its own use of a street dedicated, opened and offered for travel, it may plainly and conclusively signify its acceptance of the owner's offer and thereby acquire all the rights and assume all the responsibilities that would follow had the road been laid out and opened by proceedings in court: Com. v. Shoemaker, 14 Pa. Superior Ct. 194; Com. v. Moorehead, 118 Pa. 344.   There was evidence that work had been done by the township officers and public money expended on Dexter street as platted and opened.   True, this was chiefly east of Oxford street, but that portion may have been most traveled and in greater need of improvement.   Because the work done did not cover every foot of the street from end to end, it does not follow that the public right vested only in that portion of the width or length of the street actually

worked on.    There was some work done west of Oxford street
after its grade had been cut down to slope Dexter street into it.

But it is not essential in order to establish an acceptance by
the public, of a street laid out and dedicated by the owner, to
show an expenditure of public money thereon : Com. v. Moore-
head, 118 Pa. 344.

There was positive testimony from the plaintiff, his wife
and his other witnesses, that there had been a continuous use
of the street by the people of that section of the community,
on foot and by vehicles, from the time it was dedicated and
opened down to the time of the trial.    The use was more ex-
tensive by pedestrians than by vehicles, and was greater by
the latter before Oxford street was cut down than afterwards.

This evidence, if believed, tended to show, not merely an
occasional use of the street by an individual or two, but that
the public generally in that vicinity claimed and exercised the
right to use it whenever and by whatever means necessity or
inclination led to its use.    No more than this could be predi-
cated of the outlying portions of many streets in the towns
and villages throughout the state, and such evidence we regard
as sufficient to warrant the finding that Dexter street as
platted, opened and dedicated by the owner, had been accepted
by the public and thus become one of the highways of the
township.

The house occupied by the plaintiff and his family stood on
the northwest corner of Oxford and Dexter streets.    Just in
the rear of this lot and extending for some distance along the
north side of Dexter street was a large pool or pond in which
the water was not only deep but highly impregnated with acids
discharged into it from a knitting mill near by.    The street
was several feet higher than the water and the declivity sharp
and sudden.    There was no fence or other barrier along the
edge of the street.    The uncontradicted evidence of several
witnesses declared the place to be dangerous and that a child
or other person on the street making a misstep could easily
fall into the pool.    Under these circumstances did the defend-
ant exercise reasonable care in leaving its highway unprotected?
Such a question only a jury could properly answer, and we
do not understand it to be seriously contended that any error
was committed by the court in submitting it.

The child was last seen alive when it was left to play in the dining room while the mother looked after her household duties. He succeeded in raising the latch and getting out through the door opening on Dexter street.   He would then be on the street within a short distance of the dangerous point already referred to.   Some time afterwards his dead body with the flesh badly burned by the acid in the water was found in the pool within a few feet of that spot.   The father testified he saw in the edge of the water " where he had fell on his hands and knees in the mud there."   The inference that a child of his age could not struggle long against the deadly conditions that enveloped him as soon as he got into the water, and hence that he must have fallen in at or near the spot where his body was found, was a fair and reasonable one springing naturally from the facts in evidence.   It was therefore a proper one for the jury to adopt.

In Morgan v. Westmoreland Electric Co., 213 Pa. 151, Mr. Justice FELL says :

" There was no direct evidence that the deceased was killed by coming into contact with the iron brace.   But direct evidence was not essential.   The cause of death might properly be inferred from the location of his body with relation to the dangers to which he was exposed."

Finally, it is contended that the learned judge should have declared as matter of law that the plaintiff was guilty of contributory negligence and for this reason should have affirmed the point already quoted and withdrawn the case from the jury.   We cannot assent to this proposition.   Where the conditions out of which an alleged act of negligence arises are such that our common experience enables us to at once discover what men of ordinary prudence and care would do or refrain from doing, the courts may properly define the standard of duty to be observed and declare that a failure to measure up to that standard is negligence per se.   We have not, as we view it, such a case before us.   Neither do we think that the case of Johnson v. Reading City Pass. Ry. Co., 160 Pa. 647, cited and relied on by appellant, sustains its contention here. In that case a mother standing in her own doorway, " when there was nothing whatever to prevent watchfulness, permitted her child to come out of the open door, pass at her feet out to

a railway and there in full view place itself on the track with an approaching car also in full view." On the contrary, we regard this case as more nearly resembling the one described by Mr. Justice DEAN in his opinion in that case in the following language :

" It would be a harsh rule to hold that this mother, in her pecuniary circumstances, was bound to give her undivided attention to her child to the neglect of all other wifely duties, and there is no such rule of law in Pennsylvania, as we have held in very many cases. If the child had escaped from the house while the mother's attention was given to some other of the many cares which burden the woman who keeps her own house, the case would have come within the rulings in Kay v. Penna. Railroad Co., 65 Pa. 269 and like cases."

A careful study of the whole record has not convinced us that the court below committed any error in submitting the case to the jury and their verdict has ample support in the evidence offered and received at the trial.

Judgment affirmed.

PORTER and MORRISON, JJ., dissent.