## Hileman *v.* Hollidaysburg Borough, Appellant.

*Road law—Dedication of street—Encroachment—Act of May 9, 1889,* P. L. 173.

1. Where a street of a given length and width is dedicated to public use by a plan of lots duly recorded, and such street is promptly opened through from end to end, subjected to public travel, and improved by the expenditure of public money throughout its entire length, and a party buys a lot fronting on such street with the full knowledge of its dedication and subsequent and consequent use, and encroaches on the street by a fence, such party cannot be heard to complain when required to withdraw to the line of the dedicated street, even though twenty-one years may have elapsed since the date of the dedication.

2. The Act of May 9, 1889, P. L. 173, which was passed after the street had been subjected to public use and improved by the expenditure of public money, does not apply to such a case, inasmuch as the act had no retroactive effect, and only applied to unused streets.

Argued Oct. 25, 1910. Appeal, No. 63, Oct. T., 1910, by defendant, from decree of C. P. Blair Co., Equity Docket "D," No. 693, on bill in equity in case of Laura M. Hileman et al. v. Hollidaysburg Borough. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Bill in equity for an injunction. Before SHULL, P. J.. specially presiding.

The court below found the facts to be as follows:

1. The borough of Hollidaysburg, defendant, is a municipality duly organized and existing under the laws of this commonwealth regulating boroughs.

2. That, in the year 1877, there was plotted on the outskirts of said borough, into lots, a piece of ground, laying out by plan and draft, streets and alleys, and showing thereon Penn street, at a width of seventy feet, which said plot was duly recorded June 6, 1884.

3. That the plaintiffs, by deed of conveyance, became the owners in fee of lots numbered 13 and 14, in said plan, fronting fifty feet on Penn street and running at right angles along Hickory street 106 feet, which includes a ten-foot alley, in which said deed is recited the plan or plot and reference to the deeds of predecessors in title since the said lands were plotted in the year 1877.

4. That the portion of the lot now proposed to be taken in the widening of Penn street, for more than twenty-one years has been inclosed by the present picket fence, and prior thereto a board fence, which stood several feet further in the street.

5. That the line of the street, as shown in the plot, would extend about seven and fifteen hundredths feet inside of the present picket fence.

6. That the borough has used that portion of the street as plotted up to the board fence, as it originally stood, and to a point where the fence now stands, for a period of over twenty-one years.

7. That said borough, neither by resolution, ordinance

or other action upon the minutes of its proceedings, or through its borough authorities, accepted the dedication of Penn street, as laid out and plotted.

Upon the facts as found above the court entered a decree awarding an injunction.

*Error assigned* was the decree of the court.

*Marion D. Patterson,* with him *George G. Patterson, for* appellant.—It is true, the plaintiffs have had the part of the street in question, inclosed within a picket fence for more than twenty-one years, but adverse possession against the public for any length of time, will not bar the public's use and enjoyment of the whole width: McGuire v. Wilkes-Barre, 36 Pa. Superior Ct. 418; Wakeling v. Cocker, 23 Pa. Superior Ct. 196; Com. v. Moorehead, 118 Pa. 344; Kittanning Academy v. Brown, 41 Pa. 269; Com. v. McDonald, 16 S. & R. 390; Com. v. Rush, 14 Pa. 186; Penny Pot Landing v. Philadelphia, 16 Pa. 79; Kopf v. Utter, 101 Pa. 27.

The Act of May 9, 1889, P. L. 173, has no application: Com. v. Moorehead, 118 Pa. 344; Woodward v. Pittsburg, 194 Pa. 193.

*O. H. Hewitt,* for appellees.—The plaintiff is protected by the act of 1889: Quicksall v. Philadelphia, 177 Pa. 301; Woodward v. Pittsburg, 194 Pa. 193; Washington Female Seminary v. Washington Borough, 18 Pa. Superior Ct. 555; Oakley v. Luzerne Borough, 25 Pa. Superior Ct. 425; Shallcross v. Scott, 9 Delaware County Rep. 560; Chester v. Thurlow Land Co., 13 Pa. Dist. Rep. 285.

OPINION BY HEAD, J., July 13, 1911:

The plaintiffs took title to the lot out of which this controversy arises by deed dated October 1, 1888. That deed conveyed to them "all that lot or parcel of ground, being part of lots Nos. 13 and 14 in the borough of Hollidaysburg, fronting 50 feet on Penn street and running at right angles with Hickory street one hundred and six

feet, which includes a ten foot alley to be left open to the Over alley." It further appears that in 1877 one of their predecessors in title, being the owner of a larger piece of ground including that conveyed as above, laid the same out in a plan of lots which was duly recorded. This plan was bounded on the north by Hickory street running approximately east and west, on the south by Pine street running in the same direction, on the east by Penn street running north and south and at right angles with the two streets last named. The plan contained two tiers of lots, one facing north on Hickory street, the other south on Pine street, separated by Over alley running parallel with both. As Penn street was laid out and dedicated it was seventy feet in width, as the original plan shows. Its length was a little over 300 feet. Lots thirteen and fourteen, as originally laid out, faced north on Hickory street. At the time the plaintiffs purchased, however, they desired to face their property east on Penn street. They accordingly bought fifty feet off the north end of lots thirteen and fourteen, as laid out in the original plan, and their deed indicates that the depth of the strip they purchased was 106 feet, which was to include a ten-foot alley to run north and south from Hickory street to Over alley in the original plan. Their conveyance thus recognizes the western line of Penn street as the eastern line of their property, and, even if they fail in the contention raised by this record, they have all of the ground in front and depth which their deed describes.

At the time their conveyance was made Penn street was not only a platted street on a plan dedicated and offered to the public by the former owner of the soil, but was actually an opened traveled public street of the defendant borough. As to this there seems to be no contention raised either by the pleadings or the testimony. The bill contains no averment that Penn street, at the time of their purchase, was not an opened traveled street. The answer avers not only that said street had been laid out of the uniform width of seventy feet and thus dedi-

cated to the public, but that "it was open to the public prior to the day the plaintiffs purchased their lot and has been so used uninterruptedly by the public ever since." This averment in the answer seems to be in nowise controverted by the testimony. A witness, Walter Lindsay, testified that he lived just across Penn street from the plaintiffs' property; that this street had been opened and used by the public in front of the plaintiffs' property as long as he could remember; that he had been first elected a member of the borough council as early as 1888, and that before that time the borough, to his knowledge, had expended money in improving that street in front of the plaintiffs' property.

It further appears that at the time the plaintiffs bought, and for some time prior thereto, the exact period not being fixed by the testimony, the property they subsequently acquired had been inclosed by a board fence, which, as one of the plaintiffs states in her testimony, stood out on Penn street several feet beyond the line of the picket fence erected by them when they undertook to improve their property. The evidence shows that the plaintiffs then did not consider that they had bought out to the line of this board fence but recognized that they had bought only to the western line of Penn street, wherever that line was. When they began the construction of their building they made doubtless an honest effort to ascertain the real location of the western line of Penn street. The evidence as to this is scant and unsatisfactory. Their contractor testifies that in locating the building which he was to erect he was anxious to set it parallel with the street line. To accomplish this he sought the aid of a surveyor, Brawley, who had laid out the original plan of lots for the predecessor in title of the plaintiffs. There was some effort made to show that at the time he, Brawley, was the official engineer of the borough and that the latter would consequently be bound by his action, but the evidence to establish this entirely failed and this contention is not now pressed upon us. The whole of the plaintiffs' testimony

in this respect is embraced in the following statement of the contractor: "I was after the lines to set the house straight with the street and I went to Mr. Brawley and he gave me a line and I measured back from that line; I really don't remember whether it was supposed to be the street line or the fence line or what.  Q.  He gave you the line that you set the fence by?  A.  No, the house by." It is clear, therefore, that the plaintiffs did not contend that the true street line was indicated by the old board fence.  That was subsequently removed and they built their new picket fence a few feet back from it.  Whether or not that fence so located by them must now be regarded as the western line of Penn street so that the borough cannot open the said street to its full width as originally laid out and dedicated is the real question involved in this controversy.

It is agreed by all concerned that where the owner of land lays it out in lots with streets and alleys, records his plan and sells lots according to it, he thereby dedicates such streets to the public; but his act cannot have the effect of making such platted streets public highways. The public cannot be saddled with the responsibility for the maintenance of such streets or alleys as public highways without its consent.  As to the manner in which its acceptance of such dedicated streets may be indicated, we said, in Weida v. Hanover Township, 30 Pa. Superior Ct. 424: "It may be conceded that such acceptance is ordinarily indicated by some formal act of the municipal officers having such matters in charge.  But the public which is the master need not await the formal action of its own servants and agents.  By its own use of a street dedicated, opened and offered for travel, it may plainly and conclusively signify its acceptance of the owner's offer and thereby acquire all the rights and assume all the responsibilities that would follow had the road been laid out and opened by proceedings in court: Com. v. Shoemaker, 14 Pa. Superior Ct. 194; Com. v. Moorehead, 118 Pa. 344."

We have then the situation that a private owner of land, lying between two parallel streets, lays it out in a plan of lots and therein connects the two boundary streets by a cross street about 300 feet long running at right angles with the two already mentioned and of the uniform width of seventy feet. He thus, so far as he has the power to do, dedicates that street of that width to the public. The public at once indicates its acceptance of something by using, traveling and improving the street thus offered throughout its full length from end to end. But it also appears that, during this period, at a point between the termini of the dedicated street there stood a fence, and that for a period of more than twenty-one years the public, although constantly using the street in its entirety quo ad length, had not caused the removal of this fence and thus had not actually traveled the street over its entirety quo ad breadth. Under these circumstances what did the municipality accept? Having, under the facts stated, clearly indicated its acceptance of the entire length of the platted street offered to it, may the plaintiffs now successfully assert that it did not accept the offered street to its full width because of its failure to remove their fence back to the true street line for a period of more than twenty-one years from the time when the street was originally platted and dedicated?

It is contended in the first place that the plaintiffs are supported in their claim by the Act of May 9, 1889, P. L. 173. In Osterheldt v. Philadelphia, 195 Pa. 355, Mr. Justice MESTREZAT, speaking for the court, said: "There is nothing in this statute that would justify us in giving it a retroactive construction, so as to apply to streets opened and used prior to its passage." As we have already seen Penn street had been platted on a recorded plan and dedicated to the public as early as 1877. The plaintiffs had knowledge of that plan and bought according to it. The street had been opened on the ground, subjected to public use and improved by the expenditure of public money certainly earlier than 1888. How then could the

act of 1889 be held to apply to such a street without giving to it the retroactive effect denied to it in the language quoted?  But we can go farther.  The title of the statute is " An Act relating to unused streets, lanes and alleys." It provides that any street, etc., laid out by any person in a town plot or plan of lots on lands owned by such person "in case the same has not been open to or used by the public for twenty-one years next after the laying out of the same, shall not be opened without the consent of the owner, etc."  Looking merely at the title to and the language of this act, it would seem to have no application whatever to the facts of this case.  Penn street was not an unused street.  We have not before us a case where a borough is seeking to open a paper street long since platted or even dedicated but never before opened or used on the ground.  On the contrary, we have a case where the evidence shows that the acceptance by the public of Penn street was practically cotemporaneous with its dedication. Our question is not whether the borough may now open a street through the property of the plaintiffs which was never open before, but whether it has lost its right to open to its full width a street long since dedicated to the public, long since subjected to public use throughout its entire length, but never physically opened or traveled to the full width according to its dedication by the original owner. As we have said, if the question was one of first impression and we had nothing before us but the language of the statute itself, it would be difficult to show that the present case would be at all within its purview.

If we turn to the case of Quicksall v. Philadelphia, 177 Pa. 301, which may be regarded as the leading case in construing this statute, we find nothing to interfere with the view already expressed.  There the statute was held to be operative in a case strictly within its letter and plainly within its spirit.  The difference between that case and the present one is indicated in the following excerpt from the opinion of Mr. Justice FELL: "The streets were laid out forty-four years before the commencement of

these proceedings. They have not ·been opened to, or used by, the public. During the whole of this time the beds of the streets have been in the possession of the abutting owners, and used by them for the purpose of quarrying stone. No possession or use was claimed by others." In Woodward v. Pittsburg, 194 Pa. 193, the Supreme Court, following the case last cited, again applied the act to a case, the controlling feature of which was thus stated in the opinion: "Arabella street was not open to or used by the public for twenty-one years next after the laying out of the same." These cases clearly furnish no support to the contention of the appellees.

We must next consider how far the case of Commonwealth v. Royce, 152 Pa. 88, should be regarded as controlling the question before us. The report of the case is very brief and it is not easy to ascertain the precise facts underlying the judgment. The defendant was indicted for obstructing an alleged public street by a fence. It appeared that Fourth street, upon which the fence stood, had been laid out and dedicated sixty feet wide. Its length nowhere appears in the report of the case. The record indicates, however, that it had been opened and traveled only over a portion of its length and that the fence complained of did not stand upon the part thus opened and traveled. In the brief per curiam opinion we find the following: "Even if we concede there was sufficient evidence of the acceptance of the street by the public authorities of the borough of East Brady, such acceptance was merely of the street as it had been actually opened and used. The evidence shows that the fence complained of was not upon the opened and traveled part of the highway." We are unable to agree that the language above quoted and the judgment which followed it can be fairly regarded as authority for the proposition upon which the appellees must here rely.

In Washington Seminary v. Washington Borough, 18 Superior Ct. 555, the borough council undertook to relocate the lines of one of its streets that had existed on

the ground for a century and thereby bring within the limits of the highway what had for all that period of time been held and used as private property. The method adopted by the borough was remarkable, both for its simplicity and effectiveness. Starting with the original plan of the lots, streets and alleys as laid out by the then owner of the soil, they assumed that one particular street of that plan actually existed on the ground on the precise location of the lines shown on the original plan. Starting from that as a base line, measuring the intervening property lot by lot, and giving to each the number of feet called for in the original plan, they reached the conclusion that another street, also on an ancient plan, and which had existed on the ground for a century, opened and used to its full width, was not truly located, and therefore that all existing monuments which, during that period, had grown up along the supposed lines of that street could be disregarded and the street relocated to fit that theory. What this court decided was that such a thing could not be done. It is true that in the closing lines of the elaborate opinion in which our brother PORTER reviewed the complicated facts of that case it was said: "The burden was upon the defendants to show not only that William Hoge had dedicated this land, but that the street had been opened in accordance with the dedication and accepted by the public as a highway; that the very land over which they attempted to exercise dominion had been within the lines of the highway as opened and accepted." When it is thus manifest that the case disposed of by this court was essentially different from the one presented by this record, no argument that ought to conclude us now can be constructed by detaching, from its context and proper setting, the last clause above quoted, and treating it as the expression of a legal principle of universal application.

Without then attempting to analyze the language of some of the other cases cited and relied on by the appellees, we may say in a word that we regard no one of them as controlling of the question now before us. On the con-

trary, it appears to us that we have before us a case which comes fairly within the line of decisions of which Commonwealth v. Moorehead, 118 Pa. 344, may be said to be the leading case. There the special verdict found that the street referred to was a public street. Here such a verdict would necessarily find that Penn street was a public street. There the street was dedicated to public use by the owners of the land who laid out the town, was placed upon the plan thereof, which was afterwards recorded. The same facts appear in this case. There the verdict found that "from that time to the present the street has been used by the public, except that portion occupied by the house since its erection." Here a like verdict would necessarily find that, from the time of its dedication, Penn street had been opened and used by the public, except that portion inclosed by the fence of the plaintiffs. Penn street was used by the public before the erection of the house and fence of the plaintiffs. So much of the street as was left has been used ever since. But the inclosure of a portion of a public street can give to the plaintiffs no right, as is conclusively shown in the case to which we have referred. In Pittsburg v. Epping-Carpenter Company, 194 Pa. 318, the principle we deem controlling was thus stated in the opinion of Judge SLAGLE, adopted by the Supreme Court: "Property may be dedicated for public use by plans indicating that purpose. Such dedication becomes irrevocable when the interest of third persons is acquired by sale of lots or acceptance for the public by public use or municipal action. Acceptance by the public need not be immediate, but may be made when public necessity or convenience arises. As a corollary to this proposition it follows that it is not necessary that the public use the entire property dedicated. Any public use of part of the property, indicating a purpose to accept the gift, fixes the public right to the whole:" Com. v. Shoemaker, 14 Pa. Superior Ct. 194; Wieda v. Hanover Twp., 30 Pa. Superior Ct. 424.

If a street laid out and dedicated to public use by the

owner of the soil be several blocks in length, we do not now undertake to say that the municipality may not accept a part and reject a part of what is offered. Even where the acceptance is indicated by public use or the expenditure of public money, it may be so confined as to clearly indicate the intention of the municipality to accept but a portion of what is offered. But we have no such question before us and need not consider the relative rights of either the donor or the municipality under such conditions. We believe it to be sound, however, both on reason and authority, that where a street of a given length and width is offered to the public, and where such street is promptly opened through from end to end, subjected to public travel, and improved by the expenditure of public money throughout its entire length, the conclusion should follow, especially in the absence of any contradictory evidence, that it had accepted the entire street as dedicated and offered. And where, as here, after such street has been dedicated, opened on the ground, and thus subjected to travel, and a party buys a lot fronting on such street with the full knowledge of its dedication and subsequent and consequent use, such party cannot be heard to complain when required to withdraw to the lines of the dedicated street, even though twenty-one years should have elapsed since the date of such dedication.

The decree is reversed, the injunction dissolved, and the bill is dismissed at the costs of the appellee.