## Bond, Appellant, *v.* Barrett.

*Road law—Plan of lots—Alley—Equity—Parties—Act of May 9, 1889, P. L. 173.* ·

1. Where a person lays out his land in a plan of lots showing the lots fronting on streets and alleys, and sells and conveys the lots according to the plan, he thereby conveys to each lot purchaser an easement to have all of the streets and alleys shown in the plan kept open for the use of himself and other purchasers, and such right may be enforced by a purchaser of a lot against an earlier purchaser of another lot, although the latter had some years prior to the purchase of the former, successfully maintained a bill in equity enjoining the municipal authorities from removing an encroachment which he had made in an alley.

2. The Act of May 9, 1889, P. L. 173, relating to streets which had not been opened or used for twenty-one years does not apply to an alley or street shown on a plan of lots laid out many years prior to the passage of the act and used as an open way of some width by the public generally as occasion required.

3. Where an alley shown on a plan of lots is actually opened and dedicated to public use and subsequently a fire destroys all the marks and monuments on the ground showing the true location of the alley, the owner of the lot on one side cannot successfully maintain a bill in equity against the owner of the lot on the other side to compel the tearing down of the whole side of a brick building which had been erected years before and which was alleged to have encroached two feet on the alley, where the evidence offered by the plaintiff as to the actual width of the alley and its true location, is weak and unsatisfactory.

Argued Oct. 24, 1911. Appeal, No. 277, Oct. T., 1910, by plaintiff, from decree of C. P. Clearfield Co., Dec. T., 1906, No. 1, on bill in equity in case of S. C. Bond v. Cordie H. Barrett. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Bill in equity for an injunction.

The facts are fully stated in the opinion of the Superior Court, and are illustrated by the following plan:

The court below found, inter alia, the following conclusion of law:

As to the two and two one-hundredths feet occupied by the defendant's building wall, while the evidence of the surveyor is conclusive that this two and two one-

hundredths feet is on the original twenty feet as laid out and dedicated by John Rumbarger and his surveyor, George C. Kirk, yet we think that the true line as laid out on the ground has evidently been the subject of some controversy in the past and that some surveyor has made a mistake on the ground to the detriment of the defendant. In view of this apparent blunder and in further view of the fact that so little harm is done to the plaintiff and to the public by taking off the two feet from the alley, as compared with the serious harm to the defendant, we think it inequitable at this time to decree the removal of the building from the two feet and will let that part of the encroachment, if it be an encroachment, remain without an order of removal for the present.

Let a decree be drawn by the attorney for the plaintiff in accordance with this opinion and with the findings of law as heretofore given.

The court entered the following decree:

That Spring alley is decreed to be a public highway seventeen and eighty-nine one-hundredths feet in width, the west line thereof being fixed by the line of the wall of the present building erected on the lot of Cordie H. Barrett and maintaining said width the full length of defendant's lot, or 160 feet.

*Error assigned* was the decree of the court.

*W. C. Pentz*, with him *W. L. Calkins*, for appellant.

*J. S. Bell*, of *Bell & Hartswick*, with him *A. L. Cole*, for appellee.

OPINION BY HEAD, J., July 18, 1912:

In 1873 one John Rumberger was the owner of a parcel of land situate in Brady township, Clearfield county. He platted into lots a portion of this tract showing the lots fronting on streets, the latter being intersected by alleys in the usual manner of such plans. Two of these lots fronted on a street now called Long avenue and were

separated by a cross alley called, on the plan, Spring alley. He sold both of these lots according to this plan. By a long series of mesne conveyances the titles to these two lots have become vested in the present plaintiff and defendant respectively, the former owning the one east of the alley, the latter the one west of it. In all of the various conveyances carrying the titles to these two lots from John Rumberger, through the various intermediate owners, to the present plaintiff and defendant, the descriptions note the alley as bounding the one lot on the east the other on the west, but no one of them makes any mention of the width of the alley. The western property line of the plaintiff was therefore the eastern line of the alley, and in like manner the eastern line of the defendant was the western line of the alley, and there is no dispute between the parties on this account.

Some years later the lots embraced in said plan became a part of the borough of Dubois. Down to that time the streets and alleys of the plan had not been improved. Buildings had been erected on many of the lots, including the two now in question, and the lines of the alley had been marked by fences and an open way thus left which was occasionally used for the delivery of coal and other like purposes by those having occasion to use it, but its use was not extensive. In 1888 the borough was visited by a disastrous fire which destroyed the buildings on both lots and the fences along the alley, so that the exact locations of the lines could not easily be determined with either certainty or satisfaction. From Spring alley westward the block in which the defendant's lot is situate extends to a public street called Jared street, and this portion of the block should have embraced, according to all conveyances, three lots, each fronting thirty feet on Long avenue. Within a few years after the fire the portion of the town to which we have referred began to be improved in a more substantial manner. The present defendant acquired her title in 1889 and shortly thereafter erected a brick building thereon. As the latter was con-

structed there was an outside stairway along its eastern wall and a fence inclosing, along what was supposed to be the alley line, the same portion of frontage space covered by the outside stairway.

In 1897 the borough undertook to pave Long avenue in front of these properties. In locating the return curbs to define the lines of Spring alley, as it opened into the street about to be paved, a dispute arose between the borough officials and the present defendant, which resulted in the filing of a bill by the latter, against the various officers of the borough in charge of said paving, to restrain them from setting the curb in the manner proposed or taking possession of the alley or any part of it until the same had been duly established, and for such other relief as she might be entitled to. The defendants were represented by counsel and an answer was filed. After a preliminary injunction had been granted, further proceedings seem to have been suspended, apparently in the hope that the matter might be amicably adjusted, until in January, 1901, the court made a final decree in which it is declared that "the case came on to be heard on testimony and argument of counsel, and at the request of the parties a final decree is now entered with the same force and effect as a decree on final hearing, to wit, etc." The decree then proceeds to restrain all of the parties then defendants from in any way interfering with the possession of the then plaintiff, present defendant, in any portion of the land extending eastwardly along Long avenue for a distance of three feet ten inches from the eastern wall of her building. The decree thus practically, as between the parties to that case at least, undertook to ascertain and locate the western line of Spring alley. All of the parties seem to have acquiesced in that decree and no appeal from it was ever taken by anyone, and since that time neither the borough nor any of its officers have attempted to assert that the improvement of the defendant constituted an obstruction to the alley in question.

Several years later, to wit, in 1905, with matters in this situation, the present plaintiff purchased the lot on the east side of said alley. In 1906 he filed this bill complaining that the present defendant had encroached upon a portion of Spring alley along its western line, thus depriving him of his right to the use of that alley to its full width, which he alleged to be twenty feet. An answer was filed and the case proceeded regularly until on May 2, 1910, the learned court filed an opinion together with findings of fact and conclusions of law and the form of a decree, of which notice was given to counsel. No exceptions thereto were filed by either party within the time limited by rule 64 of the equity rules. It thereupon became the duty, under rule 65, of the prothonotary to enter the final decree as of course. The decree thus entered would have required the defendant to remove the outside stairway to her building and the fence carrying to the rear of her lot that line, but would have denied the right of the plaintiff to any further relief and permitted the walls of the brick building of the plaintiff to remain as they are. On June 1, 1910, counsel for defendant asked and obtained leave to file exceptions nunc pro tunc, and some two weeks later, on a similar request, like leave was granted to the plaintiff and exceptions were in turn filed by him. Ultimately all of these exceptions were dismissed and the decree entered, and from that decree both parties appeal. The record immediately before us is the appeal of the defendant, which we will first consider, but as both appeals are from the same decree and arise in the same record, we will then proceed in this opinion to give the reasons on which our judgment in the plaintiff's appeal is based.

(1) The learned counsel for defendant urges upon us the propositions that the former decree of the court of common pleas in the equity proceeding, begun by the present defendant against the borough officers, to which we have referred, adjudicated the right of the defendant to have her property maintained as it then was and that

the present plaintiff has no standing to file this bill and have a decree disturbing that status. This contention we must regard as untenable. The present plaintiff was no party to the proceeding referred to. He did not acquire title to the lot he now owns until some years after that decree was entered, and there is nothing in this record to show that at the time of the entry of that decree he had any interest whatever to be affected thereby. Moreover, the right which he now asserts is not one which accrued to him merely as a citizen of the borough, or as a property holder of the community, whose public and common rights might be said to be represented by the officers of the municipality. The proposition upon which he stands is that when John Rumberger sold and conveyed his lots according to a plan, he thereby conveyed to each lot purchaser an easement to have all of the streets and alleys therein shown kept open for the use of himself and of other purchasers, and that such right may be enforced against any purchaser of a lot in the same plan without any regard to the action or nonaction of any municipality of which the lots embraced in the plan might afterwards become a part. The soundness of this proposition has been repeatedly asserted in a number of cases, of which the most recent are Carroll v. Asbury, 28 Pa. Superior Ct. 354; Garvey v. Refractories Co., 213 Pa. 177; People's Nat. Bank v. Liquid Carbonic Co., 226 Pa. 503, and O'Donnell v. Pittsburg, 234 Pa. 401, just reported. The following extract from the opinion of Mr. Justice MESTREZAT in the last-mentioned case thus clearly and forcibly states the principle involved: "If there is anything settled by judicial decision in this state, it is that a sale of lots according to a plan which shows them to be on a street implies a grant, or covenant to the purchaser that the street shall be forever open to the use of the public and operates as a dedication of it to public use; and that the owner of any lot in the general plan may assert the public character of any street and the right of the public to use it. The rights in dedicated streets acquired by a

purchaser of lots by a deed referring to a plat are private contract rights, and are not affected by the failure of the municipality to act upon the dedication. . . . The proprietor of the plan therefore cannot revoke the implied easement or dedication; nor can the owner of any lot or lots, having purchased with a knowledge of the plan in accordance with which the lots were sold, obstruct or deny to the public the right to use any of the streets or alleys shown on the plan. The easement over the streets is appurtenant to every lot and becomes a property interest in the purchaser of the lot which may be protected by appropriate legal process." It must be clear then from a consideration of the cases cited that the right of the present plaintiff to file this bill and show, if he can, an obstruction by the defendant of any street or alley dedicated to public use, by the plan under which they bought, remains unaffected by the former decree to which he was no party and which could not have adjudicated the right which he now asserts.

It is further contended by the appellant that the Act of May 9, 1889, P. L. 173, protected the present defendant in the maintenance of the stairway and fence which the decree requires her to remove. We do not understand this proposition to be now seriously urged upon us, and it is manifest the act referred to can have no application to the facts of this case. The plan of Rumberger and the sales of lots according to it made by him, which together amounted to a dedication to public use of the streets and alleys therein shown, were made many years before the passage of the act, and the testimony clearly shows that from the time of such dedication there was an open way of some width used by the public generally as occasion required, and for this reason again the act could have no application: Hileman v. Hollidaysburg Borough, 47 Pa. Superior Ct. 41.

The difficulty in the present case is not to be found in the ascertainment or consideration of the controlling legal principles involved, but in the attempt, out of the

extremely meager material furnished by the evidence, to locate the lines of Spring alley as it was actually opened on the ground and dedicated to public use. There remains not a single monument on the ground which directly points to the true location of either the east or the west line of that alley. As we have already seen, all of the deeds show that between the western line of Spring alley at Long avenue and the eastern line of Jared street at the same avenue, there should be three lots each thirty feet in width on Long avenue. The defendant bought and paid for that much ground and ought not to be deprived of it except to secure some paramount conflicting right in another. Taking the wall of her brick building as it now stands and assuming that to be the west line of Spring alley, her lot would have a frontage of thirty feet and two inches, the next lot of one Solomon a frontage of thirty feet, and the third lot of McMinn, on the corner of Jared street, a frontage of thirty feet three inches. These lines would practically satisfy the requirements of all of the conveyances affecting these three lots, from the time of John Rumberger to the present time, and give to each of the owners thereof substantially the ground they have bought, paid for and improved. It is true that if we are to assume that the plaintiff's building line is identical with the true eastern line of Spring alley, the width of that alley would be but about eighteen feet. Even though it might be impossible to reach the conclusion that he suffered any tangible injury by that reduction in width, yet his right to the use of the real alley being recognized by the law, if his testimony clearly and satisfactorily showed an encroachment thereon, we are not prepared to say that his prayer for relief should be denied. But when we come to look into the evidence as to the location of the eastern line of Spring alley, upon which the plaintiff's entire case depends, we are met with such a painful lack of satisfactory proof as to cause any chancellor to hesitate to so seriously interfere with conditions, long acquiesced in, as to require a party to cut a section two feet in width

from a substantial building which has stood for many years. Again there is nothing now existent on the ground to point with certainty to the true location of the eastern line of the alley. There is the testimony of the surveyor that he made the plan showing Spring alley to be twenty feet wide and that he so staked it with the usual lot stakes used by surveyors in such work, but those stakes have long since disappeared and the surveyor cannot now undertake with certainty to relocate them. There is the testimony of one Reams, a predecessor in title of the plaintiff, who says that after the fire he "saw a post there that looked like the post of a building corner; while I owned the lot I recognized that as being my line." He further says that about halfway down along the line of this lot, running from front to rear, "there was a post that looked as if it had been a fence post burned off a few inches above the ground, and I was going to save that post but it got away at some time. That was right in line with the other." The case of the plaintiff then rests on the inference drawn from this scanty and unsatisfactory testimony that he has truly located the eastern line of Spring alley; that he has therefore established his right to measure a distance of twenty feet westward from that line and assert that he has thus fixed the western line of Spring alley, no matter how that may affect the property of the defendant or of the owners of the two remaining lots between Spring alley and Jared street. Whilst we may agree that the equitable maxim, that a decree is not of right but of grace, is not now to be accepted as broadly as it probably was in earlier days, and that where a plaintiff exhibits a clear case for relief his decree ought not to be denied, yet surely it must be still true that the conscience of a chancellor cannot be moved to affirmative action, which would be followed with such serious consequence as here, upon the presentation of a case, the foundation of which in the evidence is as weak and unsatisfactory as that which supports the present case.

An examination of the entire record and a careful study of the oral testimony and the maps and plans submitted we think must lead to the conclusion that the decree entered by the learned court below has done substantial justice to both parties and ought not to be disturbed. The assignments of error in the present case are overruled and the appeal dismissed.

Decree affirmed.