# Borough of Milford, Appellant, *v*. Burnett.

*Streets—Dedication—Acceptance by public—Method of accept-ance—Encroachment upon public way—Public nuisance—Acts of May 9, 1889, P. L. 173, and June 1, 1911, P. L. 541.*

The Act of May 9, 1889, P. L. 173, which provides that a street laid out on a town plan must be opened and used within 21 years, is not retroactive in its operation and has no effect on streets which have been actually opened to or used by the public before its passage, though more than 21 years may have elapsed between the dedication and the use.

Prior to the Act of 1889, acceptance by the public of property dedicated to public use did not have to be immediate, but could be made when public necessity arose.

Public use need not apply to the full width of the street or highway so dedicated. Any public use of a part of such width indicating a purpose to accept the gift fixes the public right to the whole, and when so used the dedication becomes irrevocable by either the grantor or those claiming under him, and cannot be defeated as to any part of its entire width by subsequent encroachments upon it no matter how long continued.

The obstruction of a street which has been dedicated to and used by the public, will be restrained as a public nuisance, even though the public use of the same has been largely discontinued for many years.

The Act of June 1, 1911, P. L. 541, which provides that any street laid out by a borough must be opened within 2 years, has no application where a borough, by ordinance, adopts an existing highway which was accepted and used by the public prior to its incorporation.

Argued March 2, 1926.   Appeal No. 21, February T., 1926, by defendant, from decree of C. P. Pike County, Sitting in Equity, December T., 1922, No. 1, in the case of The Borough of Milford v. Harold L. Burnett. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.   Reversed.

Bill in equity for an injunction to prevent the obstruction of a public highway. Before, SHULL, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the bill. Plaintiff appealed.

*Error assigned,* among others, was the decree of the court.

*Xenophon P. Huddy* and with him *Ralph W. Rymer,* for appellant.

The street was opened to and used by the public: O'Donnell v. Pittsburgh, 234 Pa. 401; Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318.

Title to a public way cannot be lost to the public by nonuser; Schmitt v. Carbondale, 257 Pa. 451; Kopf v. Utter, 101 Pa. 27; Com. v. Moorehead, 118 Pa. 344, 354; Pittsburgh v. Epping-Carpenter Co., 194 Pa. 324.

*Wilton A. Erdman,* and with him *George R. Bull,* for appellee.

OPINION BY KELLER, J., April 19, 1926:

The proofs in the case establish beyond any reasonable doubt that John Biddis, when he laid out the town of Milford, on the west side of the Delaware River, in Pike County, (then part of Northampton County), in 1796, plotted, laid out and dedicated to public use a street known as Ann Street, extending from the northwestern limits of the town southeastwardly to the Delaware River; and such dedication is not denied by the defendant in his answer—see paragraph 4. The proofs also clearly establish that the town of Milford as so laid out by Biddis was incorporated into a borough in 1874, which by ordinance duly enacted in 1878 adopted the said Ann Street, as laid out by Biddis, of the width of sixty feet, as a public street or highway of said borough, running to low water mark in the Delaware River. The deed, under which defendant claims title, conveys to him "all the right, title and interest of the [grantors] in and to all that certain piece and parcel of land, laid out upon the map or draft of said Borough of Milford *as part of Ann Street*"; and describes the tract as extending to

the Delaware River. The important point in issue in this suit is whether that portion of Ann Street, as so laid out, which extends from the top of the bank, southeastwardly to the river, was used by the public as an open way prior to the incorporation of the borough. If it was, the plaintiff is entitled to the injunction prayed for; if not, the bill was properly dismissed, for the borough admittedly took no steps looking to its formal opening.

If this portion of Ann Street so laid out and dedicated by Biddis as a public highway was accepted and used by the public as an open way prior to the incorporation of the borough, it is of no particular moment when such use began or that it was subsequently largely discontinued. The Act of May 9, 1889, P. L. 173, upon which the appellee largely relies and which is cited by the court below in its opinion, would in such case have no application. It is not retroactive in effect: Osterheldt v. Phila., 195 Pa. 355; State Road, 236 Pa. 141. It has no effect whatever on streets which have been actually opened to or used by the public before its passage, though more than twenty-one years may have elapsed between the dedication and the use. Aside from the Act of 1889, which "establishes a limitation of time where none before existed," (Quicksall v. Phila., 177 Pa. 301, 305), acceptance by the public of property dedicated to public use did not have to be immediate, but could be made when public necessity or convenience arose; and when the public right was once acquired it could not be lost by non-user: City of Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Bond v. Barrett, 50 Pa. Superior Ct. 307, 314; Hileman v. Hollidaysburg, 47 Pa. Superior Ct. 41, 47, 52. Nor need the public use apply to the full width of the street or highway so dedicated. Any public use of a part of such width, indicating a purpose to accept the gift, fixes the public right to the whole: City of Pittsburgh

v. Epping-Carpenter Co., supra; State Road, supra;
Com. v. Shoemaker, 14 Pa. Superior Ct. 194; Bond v.
Barrett, supra; Hileman v. Hollidaysburg, supra.
When so used the dedication becomes irrevocable by
either the grantor or those claiming under him:   Os-
terheldt v. Phila., supra; and could not be defeated as
to any part of its entire width by subsequent encroach-
ments upon it no matter how long continued:   State
Road, supra; Com. v. Moorehead, 118 Pa. 344, 354;
McGuire v. Wilkes-Barre, 36 Pa. Superior Ct. 418;
and any encroachment upon it constitutes a nuisance:
City of Pittsburgh v. Epping-Carpenter Co., supra;
Com. v. Shoemaker, supra.

It is not questioned that Ann Street was opened and
accepted and used by the public as a highway from its
northwestern boundary to the top of the bank of the
Delaware River. It is a well-known and much traveled
street.   The top of the bank is distant about 250 feet
from the river at low water.   The bank is very steep
for a distance of about 100 feet and from there slopes
gradually to the river.   The level portion near the
river adjoined the tract marked by John Biddis on his
map or plan as "Ferry convenience," and bordered on
the "natural cove or eddy" referred to by him in his
prospectus of the town, as "possessing singular ad-
vantages for the sheltering of boats and lumber."
Whether a ferry ever was located there, the evidence
does not show; but it does establish that the cove or
eddy referred to was used for the gathering and stor-
ing of lumber and its formation into rafts, which were
anchored in the river at the extreme end of Ann Street
and that lumbermen and the public generally used the
steep ascent up Ann Street as the means of getting
from the river to the business and residential sections
of the town; that, in fact, there was no other way of
getting up, without trespassing on private property.
For many years rafting and the floating of logs and

railroad ties was a well established, if not the principal, business of the community,—most of the rafting was collected at the foot of Ann Street and southwardly to Struble's Mill—, and the paths down Ann Street were in common use by raftsmen and lumbermen and everybody having occasion to go to the river at that point.

There were two paths, about twenty-five feet apart, which zig-zagged down the hill and almost converged at the water's edge. The bank was too precipitous to be used by vehicular traffic, but in the centre of the street between the two paths a wooden chute was built by which logs, poles, posts, ties and flag stones were delivered to the level ground near the river and were there stored, or loaded on the rafts which were made up at the foot of Ann Street. The evidence leaves no doubt in our minds that, during the many years in which the lumbering and rafting business flourished in and around Milford, Ann Street was in this manner accepted and used by the public generally as an open way from the top of the bank to the water's edge, and pursuant to its dedication as aforesaid, assumed the character of a public highway. When the lumbering business declined, and eventually practically ceased, the use of the bank as a public thoroughfare declined with it; but having been accepted and used by the public pursuant to the dedication by Biddis, and become a public way, it did not lose its character by such non-user, but remained a public way when the town was incorporated into a borough; and the ordinance of January 9, 1878, did not operate as a laying out of the street but only as an adoption of an existing highway. The Act of June 1, 1911, P. L. 541, also relied upon by the appellee and cited by the court below does not, therefore, apply to this case.

It follows that the defendant's wall, which is built

across Ann Street at the foot of the hill is an illegal obstruction and encroachment and should be removed. It is not a matter of importance that teams and vehicles never traveled up and down the bank at Ann Street. If used generally by foot passengers as a public way it did not lose its character as such because the conformation of the ground rendered vehicular traffic impracticable. There are localities with streets and alleys so steep as to be unable to be traveled by pedestrians except by steps—and impracticable for use by vehicles, but they are none the less public ways. Nor did the fact that when the rafting and lumbering business at this point had ceased and the use of the street to the river was largely discontinued, an adjoining property owner in 1889 erected a fence across the street at the top of the bank, affect the public's rights to its use: State Road, supra, p. 144; Higgins v. Sharon Boro, 5 Pa. Superior Ct. 92, 102. Nor is such right confined to the beaten track: Com. v. Shoemaker, supra, p. 203; but, as before pointed out, it includes the full width of the dedicated street. The learned court below in its findings and conclusions apparently misunderstood, as respects this point, the effect of the decisions in Washington Seminary v. Washington, 18 Pa. Superior Ct. 555, and Com. v. Royce, 152 Pa. 88; which were distinguished and explained in Hileman v. Hollidaysburg, supra, which, in turn, was approved and followed by the Supreme Court in State Road, supra, see p. 145.

The decision in Buehler v. U. S. Fashion Plate Co., 269 Pa. 428, is limited to the trial of actions at law. It does not apply to the trial of suits in equity. Admissions of fact contained in answers in equity are before the judge and to be considered by him whether formally offered in evidence or not.

The decree of the court below was apparently

based on an erroneous construction of the Acts of 1889 and 1911, supra. When rightly considered in connection with the facts in evidence they have no application to this case.

The assignments of error are sustained. The decree is reversed and the record is remitted to the court below with directions to enter a decree in conformity with the first three clauses of the prayer of the bill. Costs to be paid by appellee.