# People's National Bank of Pittsburg *v.* Liquid Carbonic Company, Appellant.

*Nuisance—Encroachment on street—Plan of lots—Injunction—Equity—Estoppel—Mortgage.*

1. Where an owner of land included in a plan of lots encroaches by mistake with a structure on one of the lots he may be compelled to remove the obstruction at the suit of an owner of one of the other lots, if it appears that the encroaching owner was not misled or deceived by the complaining owner, and that the latter had continually protested against the encroachment, and that all the parties had the same means of ascertaining the location of the street.

2. The rights of a mortgagee cannot be impaired or affected by the manner in which the mortgagor deals with the property. Thus the acquiescence or consent of the mortgagor cannot prevent the mortgagee from invoking the aid of a chancellor to remove an illegal obstruction on a street in which the mortgagee has an easement.

3. The fact that the mortgagee permitted the mortgagor to lay out the mortgaged land in lots and streets is not sufficient to warrant the conclusion that it acquiesced in or adopted the action of the mortgagor in permitting an illegal obstruction to be erected on one of the streets.

Argued Oct. 28, 1909. Appeal, No. 156, Oct. T., 1909, by defendant, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1908, No. 617, on bill in equity in case of The People's National Bank of Pittsburg and William T. Wallace v. Liquid Carbonic Company. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for an injunction.

MILLER, J., specially presiding, filed the following opinion:

### FINDINGS OF FACT.

1. The People's National Bank, one of the plaintiffs, is a corporation under the laws of the United States. The Liquid Carbonic Company, the defendant, is a corporation under the laws of Illinois, and is duly registered and authorized to do business in the state of Pennsylvania. The former is engaged in the general banking business; the latter is engaged in the manufacturing business.

2. William T. Wallace, the other plaintiff, became the owner by deed from Richard B. Baum, dated February 20, 1890, duly recorded, of a large tract of land, bounded by Winebiddle avenue, Cypress street, Gross street, and the right of way of the Pennsylvania Railroad Company, being lot No. 8 as shown in the plan attached to the partition proceedings of the estate of Rebecca Baum, deceased; this plan shows, inter alia, the extension of Winebiddle avenue and Gross street in straight lines to the said Pennsylvania Railroad's right of way.

Subsequently, on May 6, 1890, Wallace also become the owner, but no longer holds any portion, of another large tract of land in said Baum partition plan east of Winebiddle avenue, extending along the line of the said Pennsylvania Railroad right of way, and being lot No. 7 in said partition plan. These lots and lands are in the former sixteenth ward of Pittsburg.

3. Wallace laid out both of said tracts in a plan of lots known as the Wallace Plan of Ben Venue Lots; this plan was adopted by him March 4, 1891; approved by the then director of the department of public works in the city of Pittsburg on March 5, 1891, and by the common and select councils of said city on March 30, 1891, and duly entered in the office of the city engineer of said city; the plan was not presented to or approved by the mayor; on the plan are located, inter alia, Winebiddle avenue, sixty feet wide, being a continuation of said avenue to the Pennsylvania Railroad and extending north and south; Yew street, thirty feet wide, extending east and west; Asia and

Lima alleys, twenty feet wide, the former extending north and south from Cypress street to the Pennsylvania Railroad, and the latter from Asia alley east and west twenty feet to Winebiddle; also Gross street, fifty feet wide, extending north and south toward and along, but not extending to the line of the Pennsylvania Railroad.

4. From, and according to this plan, Wallace sold, and there was otherwise disposed of, all of the property described in the first deed to him excepting lot No. 5, fronting twenty feet on Gross street, between Yew and Cypress streets, extending back to Asia alley, which lot he still owns. The People's National Bank is the owner by foreclosure proceedings on a mortgage owned by it and by subsequent equity proceedings, of lots 6 to 10, inclusive, between Cypress and Yew streets, each fronting twenty feet on Gross street and extending to Asia alley; also lots 24 to 33, inclusive, between Gross street and Winebiddle avenue, fronting twenty feet on the northerly side of Yew street and extending back northwardly to Lima alley; also lot No. 23, fronting 24.83 feet on Yew street and extending along Winebiddle avenue 100 feet to Lima alley. Prior to the sale by Wallace to the defendant, as described in the next finding, Wallace had disposed of lots to other parties, among which were sales to one George Gledhill.

5. By deed dated September 15, 1891, duly recorded, Wallace sold to the defendant company their present holding, being a lot on the southwestern corner of Winebiddle and Yew street, along Winebiddle about 180 feet to the line of the Pennsylvania Railroad, and westwardly along said Pennsylvania Railroad 120 feet. In said deed is the following reservation: "Subject to the reservation to the parties of the first part of a right of way twenty-five feet in width along the northerly line of the right of way of the Pennsylvania Railroad, from Winebiddle avenue to other property of the parties of the first part, to be used for a railroad switch and as a roadway for persons, vehicles and cars by the parties of the first and second part, their heirs and assigns." At that time Wallace owned property extending westwardly along the line

of the Pennsylvania Railroad, all of which has since been conveyed to the Duquesne Reduction Company, a defendant in the suit at No. 616, September Term, 1908, and heard herewith.

6. The defendant company constructed its main building of brick, two stories in height, with foundations twenty-two feet deep in the rear, projecting out and into Winebiddle avenue a distance of seven feet at its northeast corner, said encroachment diminishing to nothing as the building runs towards the Pennsylvania Railroad. The defendant had employed an engineer who surveyed the lot and placed the pins for the dimensions of the building so encroaching upon the street, and the contractor employed by the defendant company made the excavations and constructed the foundations and erected the building in accordance with said pins. The engineer or surveyor had access to the plan in the city engineer's office. Shortly after its erection Wallace notified defendant of the encroachment. He from that time and since has protested against the erection of the building on this street. At a later period the defendant company enlarged said building without making any change along the line of its original construction so far as the encroachment was concerned.

7. The defendant has also erected, or caused to be erected, and at present maintains wooden structures or sheds attached to its main building on and across Yew street, completely taking possession thereof and rendering it impassable; it also maintains a shed or wooden building and an engine house near the center of Winebiddle avenue, as well as an incline plane occupying the center of said Winebiddle avenue, used to haul up, from their manufactory, loaded wagons. This incline plane was first constructed by one of Wallace's tenants; its use was permitted by Wallace; afterwards he acquired the ownership thereof, and in 1904 he sold it to the defendant.

8. On the right of way reserved by Wallace in defendant's deed the latter had constructed a concrete foundation extending upward from the surface ten to twelve inches, impeding the right of way as a roadway for persons and vehicles. They also operate a railroad siding or switch from the line of

the Pennsylvania Railroad into and along their works over
the right of way reserved in their deed. This siding or switch
was originally built by Wallace and extended from the Penn-
sylvania Railroad eastwardly along the property now of the
American Reduction Company, of the defendants, and across
Winebiddle avenue to other property of Wallace on the east.
This railroad switch or siding is no longer used east of Wine-
biddle avenue, nor is there any evidence that a reservation
was in the deeds of the present owners of the land there located,
nor are they parties to this proceeding.

9. In a suit reported in 219 Pa. 457, between the defend-
ant as plaintiff and the plaintiffs here as defendants, a road
or right of way was adjudged and defined as existing and ex-
tending in a southeastwardly direction from Gross street
across lots 5, 6, 7 and 8, across Asia alley, and across lots 23
to 33, inclusive, terminating in the latter lot at the corner
of Yew and Winebiddle; this road so defined practically cuts
in two the lots owned by the People's National Bank, and
also crosses lot No. 5, still owned by Wallace. The road is
well defined now, and has been and is extensively used by the
defendant with its teams and employees as the means of
ingress and egress to and from its factory. While the evi-
dence is that the defendant uses the incline plane with the
machinery connected therewith in the hauling of heavy loads
up Winebiddle avenue, there is no evidence that the road or
right of way which they enforce over the plaintiffs' land is
not and cannot be made entirely feasible for the transporta-
tion of all their products. Further, it does not appear that a
feasible road for egress and ingress does not in addition exist
over the rights of way of defendant's and Duquesne Reduction
Company's lots to Gross street, the latter being a graded and
paved street. The road across the lots in question has dimin-
ished their value.

It was also found in said proceeding that Yew street, Wine-
biddle avenue and the alleys heretofore named as laid out in
Wallace's plan were never declared opened or improved by
the city of Pittsburg and were not, to that extent, public
highways.

### CONCLUSIONS OF LAW.

1. All the structures placed, or used, or operated, or maintained, by the defendant on Yew street and on Winebiddle avenue, which includes all the sheds, engine house, incline plane, and the diagonal corner of the main building, are unlawful encroachments upon these defined and dedicated streets and must be removed.

2. The right of way reserved in the defendant's deed is an easement appurtenant to its lot. The plaintiffs not being the owners of any lots immediately appurtenant to the right of way reserved have no interest therein.

3. The plaintiffs are entitled to the free and uninterrupted passage over and upon all the streets and alleys in the Wallace Ben Venue Plan of Lots.

4. The creation and adoption of the plan of lots by Wallace, its approval by the chief of the department of public works and by the councils of the city of Pittsburg, its entry in the records of the office of the city engineer of said city and sales of the lots according to the same, constitute an irrevocable dedication by Wallace, to the public use, of all the streets and alleys marked and shown in said plan, and all lot owners in the plan are entitled to the free and uninterrupted use thereof. The defendant by accepting deeds bounding its properties by Yew street and Winebiddle avenue had record notice of the existence and location of all the streets and alleys upon which its properties abutted; it cannot obstruct the same, or use them, or any part thereof, to the exclusion of any other parties interested in the plan as owners of lots or otherwise.

The court entered the following decree:

And now, to wit, July 14, 1909, this cause came on to be heard at this term, and was argued by counsel, and upon consideration thereof, it is ordered, adjudged and decreed as follows:

1. That the defendant, the Liquid Carbonic Company, be and it is hereby commanded and required to remove from Winebiddle avenue and Yew street all the structures placed, used, operated or maintained by said company on said streets, including all sheds, the engine house, the incline plane and

the diagonal corner of the main building of said company, within one year from this date.

2. That the defendant pay the costs of this proceeding.

*Error assigned* amongst others was the decree of the court.

*David A. Reed*, of *Reed, Smith, Shaw & Beal*, with him *William A. Seifert*, for appellant.—The plaintiffs were guilty of laches: Tozier v. Brown, 202 Pa. 359; Redmond v. Saving Fund, 194 Pa. 643; Arnold v. Cornman, 50 Pa. 361; Keichline v. Hornung, 189 Pa. 560; Trout v. Lucas, 54 N. J. Eq. 361 (35 Atl. Repr. 153).

The decree of a chancellor is of grace, not of right, and he is not bound to make a decree which will do far more mischief and work far greater injury than the wrong which he is asked to redress: Charlier's Block Coal Co. v. Mellon, 152 Pa. 286; Richards's App., 57 Pa. 105; Dilworth's App., 91 Pa. 247; McCaffrey's App., 105 Pa. 253; Power's App., 125 Pa. 175; Heilman v. Lebanon, etc., Ry. Co., 175 Pa. 188; 180 Pa. 627; Wahl v. Cemetery Association, 197 Pa. 197; Keeling v. Railway Co., 205 Pa. 31.

The plaintiffs do not come into court with clean hands: Keichline v. Hornung, 189 Pa. 560.

The bank, having ratified Wallace's acts in laying out these streets after the making of the mortgage, takes its rights in the streets as of the date of the sheriff's sale in 1895. By that time the laches and estoppel of Wallace were complete, and the bank therefore stands in no higher position than he. An estoppel always binds privies in title: Chambers v. R. R. Co., 139 Pa. 347; Wahl v. Ry. Co., 158 Pa. 257; Allegheny County Light Co. v. Booth, 216 Pa. 564; Messner v. Ry. Co., 13 Pa. Superior Ct. 429.

*J. Roy Dickie*, with him *Wm. W. Wishart*, for appellees.— A sale of lots according to a plan which shows them to be on a street implies a grant or covenant to the purchaser that the street shall be forever open to the use of the public and operates as a dedication of it to public use, and any lot owner

in the plan may assert the public character of such a street, and his right to have it kept open and free from obstructions: Garvey v. Refractories Co., 213 Pa. 177; Ferguson's App., 117 Pa. 426; Higgins v. Sharon Borough, 5 Pa. Superior Ct. 92; Quicksall v. Philadelphia, 177 Pa. 301; Com. v. Shoemaker, 14 Pa. Superior Ct. 194; Witman v. Smeltzer, 16 Pa. Superior Ct. 285; Wickham v. Twaddell, 25 Pa. Superior Ct. 188; McGuire v. Wilkes-Barre, 36 Pa. Superior Ct. 418.

There can be no estoppel where the party alleging the estoppel must be considered to have had notice of all the facts and where it cannot be said that such party was misled to his disadvantage: Wright's App., 99 Pa. 425; Bigelow on Estoppel, 437; Hill v. Epley, 31 Pa. 331; Wickham v. Twaddell, 25 Pa. Superior Ct. 188; Garvey v. Refractories Co., 213 Pa. 177; Weist v. Grant, 71 Pa. 95; Brandmeier v. Pond Creek Coal Co., 219 Pa. 19.

The mortgagor cannot in any manner impair the rights of the mortgagee by the manner in which he deals with the property: King v. McCully, 38 Pa. 76; McMannis v. Butler, 49 Barb. (N. Y.) 176; Western Union Telegraph Co. v. R. R. Co., 90 Fed. Repr. 379; Cannon v. Boyd, 73 Pa. 179; Trout v. Lucas, 54 N. J. Eq. 361 (35 Atl. Repr. 153).

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1910:

This was a bill for a mandatory injunction to compel the removal of certain structures erected on a street in a plan of lots laid out and duly recorded. The learned judge has found and clearly stated all the facts, and his conclusions of law are supported by our cases. The decisions of this court, relied on by the appellant, are clearly distinguishable from the authorities applicable to the facts of this case, as pointed out in the opinion of the common pleas.

The plaintiffs are the owners of certain lots in a plan duly laid out and recorded, and allege that the defendant company has obstructed one of the streets of the plan. The defendant concedes that the owner of a lot in such a plan has a covenant that the streets of the plan shall forever remain open for the public use, and that the legal rights of the plaintiffs in the

streets are undisputed. The only question here, as suggested by the defendant company, is how far those legal rights may become unenforceable in chancery by reason of laches and estoppel. This is a very narrow question, and the facts warranted the learned court below in deciding it against the appellant.

The right of the defendant to resist the removal of the building and incline plane from the streets by reason of lapse of time, acquiescence in the encroachments, irreparable damage to the defendant, and relief disproportionate to the alleged injury is, as suggested by the trial judge, conclusively settled against the defendant by the recent case of Garvey v. Refractories Co., 213 Pa. 177.

The case is wholly devoid of any facts which would estop the plaintiffs from asserting their legal right to have the brick building removed from Winebiddle avenue. It is conceded that at the time of the construction of this building, the defendant company knew that Winebiddle avenue was one of the streets plotted in the plan and that it was bound to recognize that fact in dealing with the property. It is contended, however, that the encroachment by the building on the avenue was an innocent mistake made by the surveyors employed by the defendant to survey the land and determine the location of the avenue. The location of the building was made with reference to this survey. In all this, however, we fail to see any justification for the encroachment upon the street. The company knew of the existence of the avenue, concedes that it had no right in law to encroach upon it and that the encroachment resulted from a mistake made by its own employees in locating the building. It is not claimed that either of the plaintiffs misled the defendant as to the proper location of the avenue or, by any act or conduct, was responsible for the location of the building. On the contrary, the learned judge finds from sufficient evidence that shortly after the erection of the building, Wallace notified the defendant of the encroachment, and from that time and since has protested against its erection on the street. We therefore fail to see anything in the case which shows laches or grounds

of estoppel as against either of the plaintiffs. The defendant company relied upon its own investigations to ascertain the location of the avenue, and hence it is not in a position to claim an estoppel even on the ground of innocent mistake. This mistake was made by its own servants and hence must be regarded as having been made by itself. For this the plaintiffs are not responsible. The defendant company knew the location of the avenue as well and possibly better than the plaintiffs; it had the same means of ascertaining the location of the street as had the plaintiffs, and it used those means for the purpose. The means of knowledge of both of the parties were therefore equal. Conceding, as the defendant company does, that it had no legal right to encroach upon the avenue with its building, it has clearly shown nothing which should stay the hand of a chancellor in enforcing the right of the plaintiffs to have the obstruction removed. That, as we have seen, is the only ground upon which it seeks to defend this action.

It is further maintained by the defendant company that Wallace is estopped from asserting any right to have this building removed by reason of his conduct, and it is claimed by the defendant that the People's National Bank, the other plaintiff, can have no better claim or higher right than Wallace. This position, however, we regard as untenable. If we should eliminate Wallace from the case, the People's Bank unquestionably, we think, could maintain the action. The bank holds title to its lots by virtue of a sheriff's sale under a foreclosure proceeding on a mortgage executed and recorded in February, 1890. The title to the property therefore vested in the People's National Bank as of that date. The defendant company acquired title to its lots in the plan by deed dated September 15, 1891, and soon thereafter constructed its building which encroaches on Winebiddle avenue. At the time of the encroachment the bank did not have title to or possession of the premises which it subsequently acquired. Hence there can be no ground whatever for the contention that the bank is estopped from asserting its legal right to have the encroachment removed. The rights of a

mortgagee cannot be impaired or affected by the manner in which the mortgagor deals with the property. He cannot incumber the property by a lien or easement which would not be divested by a sale on foreclosure proceedings, nor can the acquiescence or consent of the mortgagor prevent the mortgagee from invoking the aid of a chancellor to remove an illegal obstruction upon a street on which the mortgagee has an easement. This is settled law. The People's Bank, therefore, is not affected by any act or conduct of Wallace since the record of the mortgage, and such conduct will not raise an estoppel against the bank. It is true that a mortgagee may adopt or acquiesce in the acts or conduct of the mortgagor and become responsible therefor, but such adoption or acquiescence by the mortgagee must be made to appear. The fact that the mortgagee, in the present case, permitted the mortgagor to lay out the land in lots and streets is not sufficient to warrant the conclusion that it acquiesced in or adopted the action of the mortgagor in permitting an illegal obstruction to be erected on one of the streets. Some affirmative action on the part of the mortgagee would be necessary to warrant such a conclusion. There is nothing in this case to justify a belief that the bank ever acquiesced in the encroachment of this building on the street.

There was no authority for the construction of the incline plane on Winebiddle avenue. It was an obstruction which the lot owners in the plan had a right to have removed. The fact that Wallace at one time owned it does not alter the case. The nuisance was liable to abatement at any time at the suit of a lot owner. The ownership by Wallace was, as suggested in the argument, a purely personal matter and entirely apart from the ownership of property in the vicinity. The People's National Bank had nothing to do with it, and it does not appear that it knew of its existence. In asserting its alleged equity to have this incline remain on Winebiddle avenue, the defendant company claims that it is "the only means of drawing its wagons to the public streets." The learned judge who heard the case does not agree with that conclusion. He finds that the road extending from Winebiddle avenue through

plaintiffs' lots to Gross street, and adjudged a public highway by this court in Liquid Carbonic Co. v. Wallace, 219 Pa. 457, is sufficient to afford the defendant adequate means of ingress and egress to and from its factory. On this question, he says: "While the evidence is that the defendant uses the incline plane with the machinery connected therewith in the hauling of heavy loads up Winebiddle avenue, there is no evidence that the road or right of way which they (defendant company) enforce over the plaintiffs' land is not and cannot be made entirely feasible for the transportation of all their products. Further it does not appear that a feasible road for egress and ingress does not in addition exist over the rights of way of defendant's and Duquesne Reduction Company's lots to Gross street, the latter being a graded and paved street."

The assignments of error are overruled and the decree is affirmed.